The opinion of the Court was delivered by
O’Nball.
There is, I think, no doubt of the proposition, that in the case of mere alluvion, “where the change is so gradual as not to be perceived in any one moment of time, the proprietor, whose bank on the river is increased, is entitled to the addition.” Ang. on Water Courses, chap. 2, § 53. Of this the defendant had the full benefit on the trial in the instruction to the jury, that “ mere accretions to the soil of the defendant *304 from tbe wasting of tbe land of tbe plaintiff could not be recovered;” and by it be held many acres of land wbicb bad been made by tbe washing of tbe river from the land vof tbe plaintiff.
Tbe case however turned, as to the recovery, upon another principle. Within tbe memory of tbe witnesses, and indeed until tbe cut made by Cooner, tbe main river ran in tbe old bed, marked as its centre by tbe letters C. D. That bed now remains, and along it tbe river in a freshet still flows. The land recovered is between it and tbe new river, and is, I suppose, a part of tbe original swamp land lying north of tbe old bed. After Cooner made tbe cut, tbe new river running through plaintiff’s land forced its way through tbe cut, and left tbe old bed generally dry. This is what I suppose Mr. Angel calls “Reliction,” (Angel on Water Courses, Chap. 2, § 57,) and wbicb be described thus: “ if tbe course of a river is suddenly changed, the relicted soil remains according to tbe former bounds.” Tbe defendant here contends that this change must be done suddenly: it is true tbe author says so, but it is manifest be does not mean to say it must be on one occasion, as when a river in one freshet changes its course; for be adds afterwards “suddenly and sensibly,” and tbe reference is to Hargrave’s Tracts, De Jure Maris, etc., which shows that it is not exactly applicable to tbe case in band. His next reference is to Lynch vs. Allen, 3 & 4 Dev. & Bat. 62, wbicb goes much further than this case. For there a line run and marked along tbe south bank of tbe river, and wbicb gave to tbe plaintiff tbe whole river, and which river between 1820 and 1838 bad changed its entire bed, and ran through tbe land of tbe plaintiff many acres north of tbe former bed, was held to entitle him to go to the former line designating the south bank. Judge Gaston said, in that case: “ It does not follow, that because tbe river has deserted tbe bed, in wbicb it flowed, when that deed” (the deed to tbe plaintiff in 1820,) “was executed, that tbe boundary of tbe land of tbe lessor of tbe *305 plaintiff shifted with it. Admit that such would have been the consequence if the river had receded from its southern bank by small and almost imperceptible gradations, a point upon which no opinion is intended to be expressed or intimated, this consequence does not follow from changes by sudden and violent floods. Such is stated to have been the fact in this case. The change in the bed of the river was made by freshets, which we must understand to be excessive floods, producing violent and visible changes; and the instruction of the Judge is not to be treated as an abstract proposition, but as a practical instruction to aid the jury in applying the law to the case before them.” No case can be more apposite than that case to the one in hand. For there the Judge below told the jury, if they could ascertain where the line defining the south bank was in 1820, they might go to that. Here the jury were told, “if the river changed its course, and its former channel was plain and obvious, the plaintiff would be entitled to recover to the centre of the old channel.” Was not this instruction, as in Lynch vs. Allen, “ a practical instruction to aid the jury in applying the law to the case before them ?” For the jury had been previously told, that mere accretions, or as Blackstone says, “if a river by degrees gains upon the land of a person on one side and thereby leaves the other dry, the owner who loses his ground thus imperceptibly has no remedy.”
The change of the course of a river from a known cause, as by freshets, or by some human agency, such as a cut, through which a new channel is formed, either for the whole river or for a small part, which thereby becomes enlarged and thus diverts the main stream from its old bed, does not destroy the proprietor’s right to go to the centre of the former main channel, if it remains visible, and is not covered up and destroyed by the alluvion. In this sense, and way, the instruction complained of was given. This is plainly right, and the verdict to the centre of the old channel is, as we think, also plainly right.
The trespass was in cutting off a cotton wood tree partially *306 washed down in the new cut: its root still remained in the soil of the plaintiff, it was therefore his tree, and however small a trespass it may be, still it was enough to sustain an action of trespass to try title. I remember to have once heard a most eminent Judge, the late Judge Nott, say, that in such a case the mere blazing of a tree would be a trespass sufficient to maintain the action.
The motion is dismissed.
Wardlaw, WITHERS, Whitner, and MuNRO, JJ., concurred.
Glover, J., was of counsel, and gave no opinion.

Motion dimmed.