20061

STATE of South Carolina, Appellant, v.
Jack W. GRIFFITH, Respondent
(216 S. E. (2d) 765)

*Messrs. Daniel R. McLeod, Atty. Gen.,* and *Edward B. Latimer, Asst. Atty. Gen.,* of Columbia, and *Bailey and Buckley,* of Charleston, *for Appellant,*

*Messrs. Arthur G. Howe* and *Paul N. Uricchio, Jr.,* of Charleston, *for Respondents,*

*Messrs. Daniel R. McLeod, Atty. Gen.,* and *Edward B. Latimer, Asst. Atty. Gen.,* of Columbia, and *Bailey and Buckley,* of Charleston, *for Appellant,* in Reply.

July 14, 1975.

*Per Curiam:*

This action involves the conflicting claims of the State of South Carolina (appellant) and Jack W. Griffith (respondent) to an area of tidelands, approximately 59 acres, adjacent to Wappoo Creek in Charleston County, the area having been in Berkeley County in colonial times. Respondent's claim of title to such tidelands rest solely upon a grant from the Lords Proprietors in the year 1717 to a grantee under whom respondent claims. Appellant contends that no grant relied upon by respondent conveyed such tidelands and that the title thereto remains in the State. Upon trial, and at the conclusion of the testimony, appellant moved for a directed verdict in its favor, which motion was refused. The jury returned a verdict in favor of the respondent and the State has appealed.

While there is some disagreement between the parties as to the proper statement of the question to be decided on appeal, we think the dispositive question is whether, under this record, there was any evidence which warranted submitting the issue of title to the jury. We conclude that there was none and that His Honor should have directed a verdict in favor of the appellant.

It is conceded that title to only tidelands is at issue;— that is, land between the lines of the ordinary high and low tides covered and uncovered by the daily flow and ebb thereof.

Respondent traces his chain of title back to the holdings of the Woodward family in colonial days. The Woodward holdings were composed of a Lords Proprietors grant for 400 acres of land; another for 200 acres of land; a memorial for 28 acres of land and a deed for 262 acres, the latter being a portion of a Lords Proprietors grant to one Armstrong, and the total acreage called for by conveyance into the Woodward family amounting to 890.

While the record deals with three grants from the Lords Proprietors in 1717, plus a memorial, respondent's claimed title to the tidelands in question is traced, under the evidence proffered by him to the grant to Richard Woodward of "four hundred acres of land in Berkeley County being on the east side of the Stono River, butting and bounding northerly on a Deep Creek and Marsh * * *." The record shows that the tidelands in question lie between the high lands conveyed by such grant and the creek referred to, as a northern boundary. Such tidelands also lie to the east of a portion of the high land conveyed by said grant and are separated from the Stono River by such high land. The evidence discloses that the "Deep Creek", given as a northern boundary in the grant is what is now known as Wappoo Creek in Charleston County, a tidal, navigable stream.

No plat was referred to in, or attached to, the aforesaid grant and there is an entire absence of any language in the grant signifying a specific intent to convey title to any land below the usual high water mark. Under the rules of construction consistently adhered to by this Court as to grants giving as a boundary a tidal, navigable stream, the language of the grant in question is insufficient in and of itself to convey title to the tidelands in dispute. *State v. Hardee,* 259 S. C. 535, 193 S. E. (2d) 497; *Cape Romain*

*Land & Improvement Co. v. Georgia-Carolina Canning Co.,*
148 S. C. 428, 146 S. E. 434.

The agreed statement of the case contains the following language, "Some testimony was introduced by defendant that the acreage contained in the grants under which he claimed was not correct unless the tidelands were included." Actually we are concerned only with the intent of the aforementioned grant to Richard Woodward of 400 acres of land. But, even if we consider all of the grants close scrutiny of the record fails to reveal any such testimony as referred to in the statement of the case.

As mentioned above, the conveyances into the Woodward family called for acreage totalling 890, and the record reflects that a member of the Woodward family sold the entire acreage as containing 880 acres. In the year 1826 a successor to the Woodward's claimed acreage totalling approximately 200 acres more than was called for by the deeds of the Woodward family. There is some vague evidence that the tidelands had to be included to make up this latterly claimed acreage, but none such with respect to the acreage called for in the aforementioned grant to Richard Woodward. The Woodward holdings, including high lands and adjacent tidelands, were in later years claimed to contain 1,091 acres, or as calculated by defendant's engineer in this case 1,085 acres. It thus appears that the latterly claimed Woodward holdings, including tidelands, far exceeded the acreage called for in the grants themselves.

Unike the cases of *Lane v. McEachern,* 251 S. C. 272, 162 S. E. (2d) 174 and *Conch Creek Corporation v. Guess,* 263 S. C. 211, 209 S. E. (2d) 560, the record here discloses no fact or circumstance whatever, admitted or proved, aliunde the grant, tending to prove an intent to grant to Richard Woodward any land lying below the high water mark. There is likewise an absence of any such fact or circumstance in the case of *The State of S. C. v. Yelsen Land Company, Inc., et al.,* filed herewith, 265 S. C. 216, S. E.

(2d) 876. Under such circumstance we are not here confronted with any issue as to either the quantum or the quality of evidence, aliunde the grant, necessary or sufficient to prove an intent to convey title to lands lying below high water mark.

The language of the grant itself being insufficient to convey title to the tidelands in question and there being an absence of proof of any fact, aliunde the grant itself, to show an intent to convey anything below high water mark it follows that His Honor, the trial judge, was in error in failing to direct a verdict in favor of the appellant.

Reversed.