20884

HOBONNY CLUB, INC., Respondent, v. Furman E. McEACHERN, Jr., Director of the Division of General Services, Budget and Control Board, State of South Carolina, Appellant.

(252 S. E. (2d) 133)

*Atty. Gen. Daniel R. McLeod, Asst. Atty. Gen. Edward B. Latimer* and *Staff Atty. Paul H. Infinger,* Columbia, and *Edward D. Buckley,* of *Bailey & Buckley,* Charleston, *for appellant.*

*J. Fred Buzhardt, Jr.,* of *Dowling, Dowling, Sanders & Dukes,* Hilton Head Island, *for respondent.*

February 14, 1979.

*Per Curiam:*

This is a quiet title action instituted by respondent (Hobonny) to extinguish a cloud on its title to Hobonny Plantation arising out of a claim by the State of South Carolina to all tidelands within the boundaries of the plantation. The State answered and counterclaimed asserting title to the tidelands in dispute. The matter came before the lower court on a motion for summary judgment by Hobonny. The lower court rendered judgment in favor of Hobonny from which the State has appealed. We affirm.

Hobonny Plantation lies in Beaufort County, adjacent to the Combahee River, Hobonny Creek and Duck's or Long Creek, the waters of which, for the purposes of the motion for summary judgment, were stipulated to be fresh, navigable and tidal. It was also stipulated that some of the property in question lies between the usual high water mark and the usual low water mark. The State agreed to abandon any claim it might have to land lying above the usual high water mark, and Hobonny agreed to abandon any claim to land lying below the usual low water mark.

It is stipulated that Hobonny has traced its title in a direct and unbroken chain to two grants from George the Second, King of England, to Joseph Bryan, one for five hundred (500 acres dated January 12, 1737, and the other to seven hundred forty-four (744) acres dated May 24, 1744.

In the royal grant of the five hundred (500) acre tract to Joseph Bryan, the description is as follows:

All that parcel or tract of land, containing five hundred acres being in Granville County, in the province aforesaid, and butting and bounding to the North and East on Cumbee River and creek running out of the river, to the South on land of the said Joseph Bryan and to the West on a creek known by the name of Hobonneys Creek and hath such shapes, form and marks, as appears by a plat thereof here-

unto annexed, together with all woods, underwoods, timber and timber-trees, lakes, ponds, fishings, waters, water-courses, profits, commodities, appurtenances and hereditaments whatsoever thereto belonging, or in any wise appertaining, together with privilege of hunting, hawking and fowling in and upon the same, and all mines and minerals whatsoever; saving and reserving, nevertheless, to us, our heirs and successors all white pine trees, if any there should be found growing thereon:

The annexed plat is further identified in the margin of the grant in the following words: "and hath thereunto annexed a plat representing the same tract of land certified by James St. John, Esq., Surveyor Gen. the 1st October 1736."

The annexed plat is drawn to a scale of one inch to twenty chains. The southern boundary of the platted property is shown in magnetic courses and distances, and both corners and line points on this boundary are identified by marked and described trees. On the other boundaries, "calls" or boundary points are located and identified on the plat as marked points on the ground, consisting of marked trees of various species.

In the royal grant of the seven hundred forty-four (744) acre tract to Joseph Bryan, the description is as follows:

All that parcel or tract of land, containing seven hundred and forty-four acres situate lying and being in Granville County, in the Province aforesaid, and butting and bounding to the South-eastward on lands of Stephen Bull, Esq., to the West part on the lands of Capt. Walter Izard Sen. and part on a Creek out of Combee River called Hobunnys Creek and to the Northward on lands of Capt. Walter Izard Sr. And hath such shape, form and marks, as appears by a plat thereof, hereunto annexed, together with woods, underwoods, timber and timber-trees, lakes, ponds, fishings, waters, water-courses, profits, commodities, appurtenances and hereditaments whatsoever thereunto belonging, or in any wise appertaining; together with privileges of hunting,

hawking and fowling in and upon the same, and all mines and minerals whatsoever; saving and reserving, nevertheless, to us, our heirs and successors all white pine trees, if any there should be found growing thereon; And also saving and reserving to us, our heirs and successors one tenth part of mines of silver and gold only.

The annexation of the plat of the property is in identical terminology as in the grant of 1737, except for the identity of the plat in the marginal note at the bottom of the grant, which reads: "And hath thereunto annexed a plat representing the same certified by George Hunter, Surveyor General dated the 8th day of May, 1744." [1]

The annexed plat is drawn to a scale of one inch to twenty chains. The perimeter lines of the plat consist primarily of segments of straight lines identified by distances and magnetic courses, with the corners and line points identified as trees of specified variety and designated marks. Only on the northwest corner of the platted property near the bridge over Hobonny Creek is the boundary not shown as a straight line with specified courses and distances.

These two plats have been certified in the record by a licensed professional engineer to be accurate with respect to the specified acreage when measured and computed with modern instruments, and he has further certified the boundaries to be accurately relocatable on the ground by contemporary engineering methods. The engineer has graphically demonstrated the relocatability of the boundaries by the preparation of two overlays to a 1973 aerial photograph of the property, which are exhibits in the record.

The trial court's grant of summary judgment to Hobonny was premised on the court's finding that "it was the intent of the grantor and grantee to convey the property within the perimeter of the boundaries laid out and marked on the

---

[1] This paragraph is taken from the brief of respondent for the reason that the bottom portion of the 1744 grant, on which this information is contained, does not appear in the record. The appellant filed a reply brief and has taken no exception to this statement.

ground and platted to scale on the plats attached to each of the grants."

The single question before us is whether the descriptions in the grants, including the plats incorporated therein by reference and attachment, are sufficient to show the intent to grant the property within the boundaries marked physically on the ground and accurately platted, even though these boundaries encompassed some property which lay between the lines of usual high water and usual low water, commonly referred to as tidelands.

This Court has held that lands lying between the usual high water line and the usual low water line on tidal navigable watercourses enjoy a special or unique status, being held by the State in trust for public purposes. *Cape Romain Land and Improvement Co. v. Georgia-Carolina Canning Co.,* 148 S. C. 428, 146 S. E. 434 (1928); *Rice Hope Plantation v. South Carolina Public Service Authority,* 216 S. C. 500, 59 S. E. (2d) 132 (1950). It has been further held that where a tidal navigable waterway is given as a boundary in a grant, the area between the usual high water line and the usual low water line remains in the State, unless there is ". . . specific language, either in the deed or on the plat, showing that it was intended to go below high water mark . . ." *State v. Hardee,* 259 S. C. 535, 543, 193 S. E. (2d) 497, 500 (1972). A grant from the sovereign to a subject is construed strictly in favor of the government and against the grantee. *State v. Hardee, supra.*

Despite the special status accorded tidelands, the government, and specifically the King of England, had the power to grant, and did in fact grant, tidelands to subjects, who exercised private ownership. *Lane v. McEachern,* 251 S. C. 272, 162 S. E. (2d) 174 (1968).

It is the contention of the State that the reference to the grants to the lands as "butting and bounding" the named navigable tidal waterways mandate the application of the *Cape Romain* rule of construction mentioned above so as to

fix Hobonny's boundary at the usual high water line. This view fails to give any weight to the detailed plats attached to and incorporated into the grants.

Under the decision in *Cape Romain,* it is clear that had not the plats been incorporated by reference into the grants of 1737 and 1744 to Joseph Bryan, the boundary of the property conveyed would have extended only to the usual high water line of the named waterways. But these plats were incorporated into the grants and show with precision where the boundaries of the tracts conveyed lie.

Where a deed describes land as it is shown on a certain plat, such plat becomes part of the deed for the purpose of showing the boundaries, metes, courses and distances of the property conveyed. *Carolina Land Co., Inc. v. Bland,* 265 S. C. 98, 217 S. E. (2d) 16 (1975); *Lynch v. Lynch,* 236 S. C. 612, 115 S. E. (2d) 301 (1960). In both the grant of 1737 and the grant of 1744 to Joseph Bryan, the applicable plat was referenced twice: once in the description with the words "and hath such shapes, form and marks, as appears by a plat thereof, hereunto annexed" and again in the margin of the grant, in handwriting, with the words "and hath thereunto annexed a plat representing the same tract of land" followed by the name of the certifying Surveyor General and the date of certification.

The State emphasizes that the grants do not contain any reference to the low water mark as indicative of the conclusion that the grantor did not intend to convey tidelands, citing *Cape Romain* as authority for such conclusion. It was not contended in that case that other than one of two lines, usual high water or low water, was the boundary, Hobonny contends that the plats show that the boundary of the property conveyed is a physically established line, surveyed and marked on the ground, which does not consistently conform to either the usual low water line or the usual high water line. In short, respondent is claiming only that property that lies physically within the perimeters of the two

plats in question. From the above, it is apparent to us that the failure of the grantor to use "low water line" in describing the property conveyed was not significant in that the attached plats precisely showed the boundaries of the land granted without the necessity of resorting to words. There is no question but that the perimeters of the plats embrace tidelands. This is conceded by the State.

It is our opinion that the plats in question speak with a precision not usually attainable by mere words, and they compel the conclusion that the grantor intended to include the tidelands encompassed within the perimeters of the plats. It is difficult to imagine how more precisely to express intent as to the location of boundaries than to incorporate an accurate plat in the description. The plats incorporated in the two grants to Joseph Bryan are exceptional. They are not mere maps on which boundary waterways are drawn in free-hand to represent directions and conformations of boundaries. These plats are carefully scaled and platted so as to delineate the boundaries of the tracts granted with mathematical precision. It is undisputed that the boundaries are accurately relocatable on the ground by contemporary engineering methods. The specificity of the attached plats outweigh, in our judgment, the general terms of the descriptions in the grants in determining the intent of the grantor.

We conclude that it was the clear intent of the grants in question to convey title to all tidelands lying within the perimeter lines of the plats accompanying the grants to Hobonny's predecessor in title, Joseph Bryan. The lower court correctly held that Hobonny has valid title to the tidelands embraced within the boundaries of the plats attached to the royal grants to Joseph Bryan of 500 acres in 1737 and of 744 acres in 1744, and that the State of South Carolina has no valid claim of title to said property.

Affirmed.