0314

HORRY COUNTY, A Body Politic, Respondent, v. Horace L. TILGHMAN, Jr., Anne T. Boyce and N. E. Derrick and B. Pratt Gasque, as Trustees of The Bell M. Tilghman Trust, Appellants.

(322 S. E. (2d) 831)

Court of Appeals

*Green, Sasser & Beverly,* Conway, *for appellants.*

*Thompson & Henry, P. A.,* Conway, *for respondent.*

Heard Sept. 24, 1984.

Decided Nov. 8, 1984.

CURETON, Judge:

This appeal involves the question of whether appellants, members of the Tilghman family (Tilghmans), own an interest in a thirty-nine acre tract of submerged land constituting a portion of Waites Island[1] located in Horry County, South

---

[1] According to records maintained by the South Carolina Department of Archives and History (Volume 6, Colonial Plats, at page 424, dated July 31, 1745), the correct spelling of the name of this island is "Waties Island."

Carolina. The County of Horry, in the exercise of eminent domain, has taken a fifty-acre tract of land owned by the Tilghmans and contiguous to the tract in dispute for the construction of a navigation channel known as the Little River Stabilization Project. The County, claiming a right to the contiguous tract, proposes to raise it above the high water mark and use it in the construction of the channel. The matter was tried before a master who held that the Tilghmans had no interest in the submerged land. The circuit court agreed and the Tilghmans appeal. We affirm.

Waites Island lies on the North Carolina-South Carolina border at the mouth of the Little River. At its mouth, the Little River forms Little River Inlet, the northermost inlet on the South Carolina coast.[2]

To provide a navigable channel of consistent depth at low tide, as envisioned by the Little River Inlet Stabilization Project, it was necessary for Horry County to condemn three geographical sections of Waites Island. The primary taking involved the condemnation in fee of approximately fifty acres. Additionally, a five year construction easement and a pipeline easement in perpetuity, respectively, involved 12.66 acres and a 30′ x 2250′ strip.

Aerial photographs in evidence established that up until 1949, the northeastern end of the island extended almost to the North Carolina border, separating the Little River Inlet from the Atlantic Ocean. Aerial photographs subsequently taken at various intervals from 1958 to 1973 revealed a gradual erosion of the northeastern section of the island. At the time of the commencement of this proceeding a substantial portion of the northeastern corner was submerged during high tide.

The parties stipulated that part of the project will be built upon a portion of the submerged land that was once part of the island. It was estimated that the project will raise some thirty-nine acres, presently submerged during high tide, to an elevation of eight to ten feet above sea level. It is this acreage for which the Tilghman family seeks additional compensation.

The Tilghman family trace their title to the submerged land

---

[2] See Horry County v. Woodward, 318 S. E. (2d) 584 (S. C. App. 1984).

to an 1863 grant from the State of South Carolina. They claim that they have title to or a property interest in the submerged land for which they are entitled to be compensated. On the other hand Horry County argues that the Tilghmans lost all incidents of their title by the erosion of the sea and the State now has title to the submerged land.

The special master concluded that the Tilghmans no longer retained any incident of title in the submerged land. The trial judge concurred and concluded that Horry County need not compensate the Tilghmans for the land.

The parties disagree as to the precise issue we must decide in this appeal. We are convinced however that Horry County's formulation of the issue is correct: whether the Tilghmans have shown some present title or interest in the submerged land that entitles them to compensation.

In *Horry County v. Woodward*, 318 S. E. (2d) 584 (S. C. App. 1984), Judge Bell, writing for the Court stated:

South Carolina recognizes the general common law rule that accretions by natural alluvial action to riparian or littoral lands become the property of the riparian or littoral owner whose lands are added to. *See Spigener v. Cooner*, 42 S.C.L. (8 Rich.) 301, 64 Am. Dec. 755 (1855) (dictum); *State of South Carolina v. Beach Co.*, 271 S. C. 425, 248 S. E. (2d) 115 (1978) (dictum). Conversely, lands gradually encroached upon by water cease to belong to the former reparian or littoral owner. *See Spigener v. Cooner, supra* (dictum). The rule rests on the impossibility of identifying at any given moment the imperceptible additions to or subtractions from riparian land caused by the constant action of water. It ensures that riparian land will remain riparian, whatever changes may take place in the adjacent watercourse or shoreline by accretion or reliction. The law gives the riparian proprietor the benefit of additions to his land caused by accretion or reliction. However, it also requires him to bear the corresponding risk that land will be lost by gradual erosion or submergence. The rule is said to rest on the principle of natural justice that one who sustains the burden of losses imposed by the contiguity of waters shall be entitled also to whatever benefits they bring. *Ocean City Association v. Shriver*, 64 N.J.L. 550, 46 A. 690,

51 L.R.A. 425 (1900); J. Angell, *A Treatise On The Right Of Property In Tide Waters*, 69 (1826).

The Tilghmans do not quarrel with the propositions of law above discussed. Their argument is that in awarding compensation, the trial court must necessarily consider the fact that in the construction of the channel the Corps of Engineers will cause to be raised approximately thirty-nine acres of the submerged land above high water mark. At that time, they argue, title to the submerged land which was lost to them by erosion will revert to them, because the artificial accretion will be accomplished by the Corps of Engineers, a stranger to the title.[3]

While not clear to this Court, the Tilghman's argument ██ must necessarily be premised upon the contention that the right to accretion in the submerged land is a distinct interest independent of the fee title to the contiguous fifty-acre tract already condemned by Horry County. This contention is untenable. When tidelands are condemned in fee simple, the condemnor acquires all rights appurtenant to the land. *Greenwood County v. Watkins*, 196 S. C. 51, 12 S. E. (2d) 545 (1940); 26 Am. Jur. (2d) *Eminent Domain* Section 135 (1966); *cf. United States v. Twin City Power Co.*, 350 U. S. 222, 76 S. Ct. 259, 100 L. Ed. 240 (1956). The riparian or littoral right to future alluvion is a vested one which is an inherent and essential attribute of the fee. *County of St. Clair v. Lovingston*, 23 Wall 46, 23 L. Ed. 59 (1874); *Nordale v. Waxberg*, 12 Alaska 399, 84 F. Supp. 1004 (D. Alaska 1949), *aff'd*, 12 Alaska 695, 182 F. (2d) 1022 (9th Cir. 1950); *Littlefield v. Nelson*, 246 F. (2d) 956 (10th Cir. 1957); *Brundage v. Knox*, 279 Ill. 450, 117 N. E. 123 (1917); *Michaelson v. Silver Beach Improvement Association*, 342 Mass. 251, 173 N. E. (2d) 273 (1961); *Tatum v. St. Louis*, 125 Mo. 647, 28 S. W. 1002 (1894); *Adams v. Roberson*, 97 Kan. 198, 155 P. 22 (1916); *Frank v. Smith* 138 Neb. 382, 293 N. W. 329 (1940); *State v. 6.0 Acres of*

---

[3] The Tilghmans charactize the Corps as a stranger to the title and condemnation proceeding even though Horry County is essentially condemning the land for the Corps. The Little River Stabilization Project is being financed with local, state and federal funds. Authorization for such a project is found in the Public Works Eminent Domain Law, Title 28, Chapter 5 of the South Carolina Code of Laws, 1976.

*Land,* 101 N. H. 228, 139 A. (2d) 75 (1958); *City of Missoula v. Bakke,* 121 Mont. 534, 198 P. (2d) 769 (1948).

The Tilghmans concede that they are not trying to contest the right of Horry County to condemn this property, but are "simply trying to establish that they do own a property interest in the 39.03 acres to which they have title . . . and for which they are entitled to just compensation." We do not agree. The condemnation divested the Tilghmans of any rights upon the accretion, reliction or re-emergence of the acreage, whether accomplished by natural or artificial causes. *Bonelli Cattle Co. v. Arizona,* 414 U. S. 313, 94 S. Ct. 517, 38 L. Ed. (2d)526 (1973); *U. S. v. Claridge,* 416 F. (2d) 933, 935 (9th Cir. 1969); *State v. Holston Land Co.,* 272 S. C. 65, 248 S. E. (2d) 922 (1978); *De Simone v. Kramer,* 77 Wis. (2d) 188, 252 N. W. (2d) 653 (1977); *State Department of Natural Resources v. Pankratz,* 538 P. (2d) 984 (Alaska 1975); *State Engineer v. Cowles Bros., Inc.,* 86 Nev. 872, 478 P. (2d) 159 (1970); 7 *Powell On Real Property* Section 983, p. 614.

It is generally acknowledged that the riparian rights—access to the water—"often constitute the principal value of the land." *Lamprey v. Metcalf,* 52 Minn. 181, 53 N. W. 1139, 1142 (1893); *Bonelli Cattle Co. v. Arizona, supra; accord, Linn Farms, Inc. v. Edlen,* 111 Ill. App. (2d) 294, 250 N. E. (2d) 681 (1969); *Michaelson v. Silver Beach Improvement Association, Inc., supra; De Simone v. Kramer, supra.*[4]

An owner's right to accretion depends upon the con-tiguity of his lands to navigable waters and it is indispensable that there be an estate to which the accretion can attach. *Saulet v. Shepherd,* 4 Wall 502, 18 L. Ed. 442 (1866); *Ocean City Association v. Shriver, supra.* Horry County, having condemned the fifty-acre tract adjacent to the subject property, also acquired whatever right the Tilghmans had to add to that land by accretion. *County of St. Clair v. Lovingston, supra.*

We also hold that even if the Tilghmans have some present interest in the submerged land, it nonetheless may be appropriated for public use (navigational pur-

---

[4] The master found that ". . . the most valuable land in Horry County is the ocean front property. It is valuable because of the owners' access to the water." Moreover the condemnation award of $1,160,121 for the land condemned reflects valuable consideration for such riparian rights.

poses) by Horry County without compensation. In *Early v. South Carolina Public Service Authority*, 228 S. C. 392, 406, 90 S. E. (2d) 472 (1955), it was said:

> The holding in the cast last mentioned [*U.S. v. General Motors Corp.*, 323 U. S. 373, 65 S. Ct. 357, 89 L. Ed. 311] in nowise impinges upon the dominant power of the government in the interest of navigation, for there can be no doubt, since *Willink v. United States*, 240 U. S. 572, 36 S. Ct. 442, 60 L. Ed. 808, *United States v. Chicago, M., St. P. & P. R. Co.*, 312 U. S. 592, 61 S. Ct. 772, 85 L. Ed. 1064, and *United States v. Willow River Power Co.*, 324 U. S. 499, 65 S. Ct. 761, 89 L. Ed. 1101, that that power extends to the entire bed of the stream, i.e., to ordinary high water mark on either side, and that whatever private property rights for interests a riparian owner may have within those boundaries may be taken or destroyed in the exercise of the power without obligation on the part of the government to compensate him therefor, because they always were, and always will be, subject to the navigation servitude. . . .

*Accord, Bonelli Cattle Co. v. Arizona, supra; Marine Ry. & Coal Co. v. U. S.*, 257 U. S. 47, 42 S. Ct. 32, 66 L. Ed. 124 (1921).

In *Borough of Wildwood Crest v. Masciarella*, 92 N. J. Super. 53, 222 A. (2d) 138 (1966), the court after holding that land formed by accretion belonged to the contiguous upland owner, nevertheless held:

> This court would only impose two limitations on this rule. First, artificial accretions which are caused solely by the act of the upland owner should not inure to his benefit, for the upland owner should not be permitted to enlarge his own estate at the expense of the State. However, if alluvion is formed artificially and not by his direction, he should be entitled to its benefit. Second, if a project is undertaken by the State or any governmental agency in aid of navigation, and it is essential that the State or agency thereof have the benefit of the alluvion formed by the accretion in order to realize the goal undertaken by the project, it must be held that the private rights yield to the interest of the public. *See Michaelson v. Silver Lake Beach Improvement Ass'n, Inc., supra*, 173 N. E. (2d) at p. 277.

*Accord, Bonelli Cattle Co. v. Arizona, supra; De Simone v. Kramer, supra;* Here it is stipulated that the thirty-nine acres to be raised during construction of the project will be needed by Horry County for navigational purposes.

Accordingly, we hold that the trial judge was correct when he held that the Tilghmans have no interest in the submerged lands to which they are entitled to compensation.

Affirmed.

SANDERS, C. J., and GARDNER, J., concur.