THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
George C. Greene, III and Molly F. Greene,       
Respondents,
 
 
 

v.

 
 
 
Jack W. Griffith,       
Appellant,
 
 
 

and

 
 
 
The State of South Carolina,       
Respondent.
 
 
 

Appeal From Charleston County
Roger M. Young, Master-in-Equity

Unpublished Opinion No. 2004-UP-056
Heard December 12, 2003  Filed January 
 29, 2004

 AFFIRMED

 
 
 
Desa A. Ballard, of W. Columbia and George H. McMaster, of 
 Columbia, for Appellant.
Attorney General Henry Dargan McMaster, Deputy Attorney General 
 Treva G. Ashworth, Assistant Deputy Attorney General J. Emory Smith, Jr., all 
 of Columbia and  W. Foster Gaillard and Thomas L. Harper, Jr., both of Charleston, 
 for Respondents.
 
 
 

PER CURIAM: This case involves the disputed 
 ownership of real property.  George C. Greene, III and Molly F. Greene sought 
 to prove they owned a disputed tract of land and that Jack W. Griffith had slandered 
 the title to their property by causing a plat to be recorded that showed Griffith 
 as the disputed tracts owner.  Griffith denied these allegations and brought 
 a third-party action against the State of South Carolina seeking to quiet title 
 to other, adjoining property.  The trial court ruled in favor of the Greenes 
 and the State, finding title to the disputed properties rested with the Greenes 
 and the State, respectively.  Griffith appeals.  We affirm.
FACTS
This action arose when Griffith claimed ownership of 
 a twelve-foot strip of land held by landowners George and Molly Greene.
In 1984, the Greenes purchased a lot known as 134 
 East Edgewater Park Drive in Charleston County by deed from Inez R. Bradham.  
 This deed describes the boundaries of the property by reference to a plat dated 
 February 6, 1984, that indicates the high water mark along Wappoo Creek serves 
 as the lots eastern boundary.  The deed was properly recorded.  In 1985, the 
 Greenes built a home on the lot, where they have lived continuously since.  

Griffith claims to have acquired adjacent property 
 known as Marsh Island by deed in 1964.  The Marsh Island deed references 
 a 1913 plat (McCrady Plat) that depicts the property as being surrounded on 
 all sides by creeks or bodies of water.  One of these creeks separates Marsh 
 Island at its western edge from the area that now comprises the Edgewater Park 
 Subdivision, where the Greenes lot is located.
In 1997, Griffith commissioned Hagar E. Metts to 
 perform a survey of  the Marsh Island property.  Metts prepared a plat (Metts 
 Plat) that showed a strip of highland extending from the northeastern corner 
 of Marsh Island across the northern property line of the Greenes lot, suggesting 
 that a narrow twelve-foot strip of land on the eastern edge of the Greenes 
 lot was actually owned by Griffith.  The Metts Plat was recorded.
The Greenes learned of the Metts Plat when Griffiths 
 son offered to trade the disputed strip of land with the Greenes in exchange 
 for a grant of an access easement to Marsh Island over the Greenes lot.  The 
 Greenes refused to accept the proposed trade and brought this action to quiet 
 title to the disputed portion of their lot or, alternatively, seeking a declaration 
 that they owned the disputed area by adverse possession. 
 [1]   They also sought damages for slander of title.  Griffith denied the 
 Greenes allegations and asserted a counterclaim, seeking an easement by necessity 
 across the Greenes property. 
The trial court determined the Greenes had title 
 to the disputed strip of land adjacent to Marsh Island.  Alternatively, it found 
 the Greenes had ownership of the disputed strip by virtue of adverse possession. 
  The court also found the Greenes were entitled to $55,676.62 in damages 
 for slander of title caused by Griffith.  Griffiths counterclaim for an easement 
 by necessity was denied.
Though this case was 
 originally an action to determine title between the Greenes and Griffith, the 
 trial court determined that all or a portion of the Marsh Island property might 
 be subject to a claim of title by the State. Consequently, the State was joined 
 as a party.
In Griffiths amended pleadings, he filed a third 
 party complaint in which he alleged he had superior title over the State to 
 the highlands on Marsh Island.  The State answered, denying Griffiths claim 
 of superior title.  The trial court found title to the highland portions of 
 the Marsh Island property rested solely with the State.
STANDARD OF REVIEW
Concerning the dispute between the Greenes and 
 Griffith, the Greenes complaint labels its first cause of action as one to 
 quiet title.  An action to quiet title is one in equity.  See Van 
 Every v. Chinquapin Hollow, Inc., 265 S.C. 474, 477, 219 S.E.2d 909, 910 
 (1975); Freeman v. Freeman, 323 S.C. 95, 98, 473 S.E.2d 467, 469 (Ct. 
 App. 1996).  However, where, as here, one party asserts paramount title to the 
 disputed land to defeat the other partys claims, it is an action at law.  Mountain 
 Lake Colony v. McJunkin, 308 S.C. 202, 204, 417 S.E.2d 578, 579 (1992); 
 see also Watson v. Suggs, 313 S.C. 291, 293, 437 S.E.2d 
 172, 173 (Ct. App. 1993) (holding that [a]n action brought for the primary 
 purpose of determining title to a disputed land is in the nature of a trespass 
 action to try title, which is an action at law).  
The Greenes complaint also asserts causes of action 
 for slander of title and adverse possession  both actions at law.  See 
 Miller v. Leaird, 307 S.C. 56, 61, 413 S.E.2d 841, 843 (1992) (noting 
 that an adverse possession claim is an action at law); Boehnlein v. Ansco, 
 Inc. 61 Or. App. 389, 393, 657 P.2d 702, 705 (1983) (holding that slander 
 of title is an action at law).  We also note the only damages sought or awarded 
 were under the slander of title claim.
We hold the action between Griffith and the Greenes 
 should be characterized as an action at law, and Griffith, through counsel, 
 so conceded at oral argument as to the slander of title claim.  As such, our 
 scope of review extends only to the correction of errors of law, and factual 
 findings of the trial court will not be disturbed on appeal unless a review 
 of the record discloses that there is no evidence that reasonably supports those 
 findings.  Crary v. Djbelli, 329 S.C. 385, 388, 496 S.E.2d 21, 23 (1998) 
 (citing Townes Assocs., Ltd. v. City of Greenville, 266 S.C. 81, 85, 
 221 S.E.2d 773, 775 (1976)).
We find Griffiths third party action 
 against the State concerning title to the highlands involves these parties 
 respective claims of paramount title.  The pleadings, having squarely placed 
 the issue of paramount title before the court, present a legal claim.  See 
 Van Every, 265 S.C. at 479, 219 S.E.2d at 911 (holding that where pleadings 
 present an issue regarding paramount title to land, the issue is a purely legal 
 issue).  Our scope of review with respect to Griffiths third party action 
 against the State is, therefore, limited to the correction of legal errors and 
 determining if any evidence supports the trial courts factual findings. 
 [2] 
LAW/ANALYSIS
I.       Slander of Title
Griffith first contends the trial 
 court erred in finding he slandered the title to Greenes property.  We find 
 no error.
In South Carolina, slander of title has 
 been recognized as a common law cause of action.  See Huff v. Jennings, 
 319 S.C. 142, 148, 459 S.E.2d 886, 890 (Ct. App. 1995) (holding that, although 
 the court was directly addressing a claim for slander of title for the first 
 time in South Carolina jurisprudence, South Carolina law, through its incorporation 
 of the common law of England, recognizes a cause of action for slander of title).  
 To maintain a claim for slander of title, our courts have held the plaintiff 
 must establish (1) the publication (2) with malice (3) of a false statement 
 (4) that is derogatory to plaintiffs title and (5) causes special damages (6) 
 as a result of diminished value in the eyes of third parties.  Id. at 
 149, 459 S.E.2d at 891 (adopting the elements of slander of title outlined in 
 the Restatement (Second) of Torts § 623A (1977)).
Here, Griffith contests the trial courts 
 ruling that he slandered the Greenes title on the grounds that the Greenes 
 failed to establish Griffith acted with malice and that the Greenes failed to 
 prove they consequently suffered special damages.  We disagree.

A.      Malice         

We first find sufficient evidence to support the 
 trial courts finding that Griffith acted with the requisite malice when he 
 recorded the Metts Plat.  This court held in Huff v. Jennings that [i]n 
 slander of title actions, the malice requirement may be satisfied by showing 
 the publication was made in reckless or wanton disregard of the rights of another, 
 or without legal justification.  Huff, 319 S.C. at 150, 459 S.E.2d at 
 891.
Sufficient evidence supports the finding that Griffith 
 acted in reckless or wanton disregard of the Greenes rights to the disputed 
 strip and that he acted without legal justification.  Significantly, we note 
 Griffith admitted at trial that he owns no interest in the disputed strip of 
 land and that he never thought he held any interest in that land.  Despite this 
 admission, Griffith testified that he instructed Metts to prepare the plat and 
 stated, I told [Metts] that the tax office said I owned [the strip of land 
 in question].  Metts testified that, when he prepared the plat, he had no evidence 
 that Griffith had any ownership interest in the disputed strip. 
Griffith counters that he did not record 
 the plat, and he did not have any knowledge of how the plat came to be recorded.  
 However, the record contains ample evidence supporting the trial courts finding 
 to the contrary.  For example, Griffiths own testimony reveals that he had 
 the plat delivered to the Charleston County Planning Department, he had meetings 
 with the Planning Department that involved reference to the plat, and the plat 
 was returned to Griffith after it was recorded.  Notably, when asked at trial: 
 Did you write a check to get that plat recorded?, Griffith responded that 
 he might have.
 Without looking beyond Griffiths own 
 testimony, we find ample evidence to support the trial courts finding he acted 
 with malice as defined under Huff.  Acknowledging he has never had any 
 legal claim to the disputed property, we find Griffith willfully ignored the 
 Greenes rights in the property and had the plat prepared and recorded with 
 no legal justification.

B.      Special Damages

The trial court conducted a separate hearing to 
 determine the amount of damages the Greenes were entitled to receive under the 
 slander of title claim.  The court awarded as special damages $57,675.62 for 
 expenses incurred for attorney fees, expert fees and other litigation costs.  
 Huff, 319 S.C. at 151, 459 S.E.2d at 892 (stating that special damages 
 recoverable in a slander of title action include the expense of measures reasonably 
 necessary to counteract the publication [of slanderous statements of title], 
 including litigation (quoting 50 Am.Jur.2d Libel & Slander § 560)).  
 Griffith challenges the propriety of awarding attorney fees and litigation expenses 
 in a slander of title action.  In response, the Greenes argue Griffith failed 
 to preserve this issue for appellate review.  We agree with the Greenes.
At trial, Griffith did not object to the 
 Greenes entitlement to these litigation expenses.  Griffiths counsel merely 
 requested leave of court to file a brief  I just want to be able to review 
 the bills, and submit a brief if I do have a question of law concerning multiple 
 charges.  The trial court granted Griffiths request, observing, I will leave 
 [the record] open for ten days to allow [Griffith] to file a memorandum on that.  
 Griffith filed no response and no Rule 59(e), SCRCP, motion was filed challenging 
 the special damages in any respect.  Having failed to properly raise and preserve 
 this issue in the trial court, Griffith may not challenge the award of special 
 damages for the first time on appeal.  See Wilder Corp. v. Wilke, 
 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) (It is axiomatic that an issue 
 cannot be raised for the first time on appeal, but must have been raised to 
 and ruled upon by the trial judge to be preserved for appellate review.).    

II.      Adverse Possession
          Griffith next argues 
 the trial court erred in finding the Greenes held title to the disputed strip 
 by virtue of adverse possession.  However, by Griffiths own admission, he neither 
 claims nor holds any interest in the property.  Thus, no we find justiciable 
 controversy exists with respect to the adverse possession claim.  Accordingly, 
 we decline to address this issue.  See Mathis v. South Carolina State 
 Hwy. Dept, 260 S.C. 344, 346, 195 S.E.2d 713, 714 (1973) (stating that 
 an appellate court will not make an adjudication where there remains no actual 
 controversy).
III.    Title Dispute with the State
Griffiths dispute with the State involves the 
 highland portions of Marsh Island adjacent to the twelve-foot disputed strip 
 and lying to the east of the Greenes property. 
 [3]   Griffith claims he holds title to all of the highland portions of 
 Marsh Island.  The State, however, asserts superior title to these highland 
 areas. [4] 

A.      Chain of Title

We first concur we the trial courts conclusion 
 that Griffith does not own the portion of the marshlands in dispute, for the 
 contested portion is not part of Griffiths chain of title.  We further find 
 Griffith has abandoned this issue on appeal.  In his final brief, Griffith recites 
 in conclusory fashion under the section entitled statement of the case that 
 in 1964 he acquired the property known as Marsh Island.  In the argument section 
 of the brief, Griffith merely finds fault with the trial courts laborious 
 analysis of the chain of title of the Greenes and Griffith, none of which was 
 necessary  nor [is] any of the trial judges analysis regarding the chain of 
 title  relevant to Griffiths claim.  We find the detailed analysis of the 
 change of title not only relevant, but also dispositive of the issue before 
 us.  The passing reference in Griffiths brief to the testimony of his expert, 
 with neither supporting authority nor argument, falls short of our issue preservation 
 rules.  See Fields v. Melrose Ltd. Pship, 312 S.C. 102, 106, 
 439 S.E.2d 283, 285 (Ct. App. 1993) (stating an issue raised on appeal but 
 not argued in the brief is deemed abandoned and will not be considered by the 
 appellate court);  Bell v. Bennett, 307 S.C. 286, 294, 414 S.E.2d 786, 
 791 (Ct. App. 1992) (holding that failure to argue issue in brief constitutes 
 abandonment of it); Toal, Vafai, & Muckenfuss, Appellate Practice in 
 South CarolinaSearch Term End , 75-76 (S.C. Bar 2000) (stating an issue 
 is deemed abandoned on appeal, and therefore, not presented for review, if it 
 is argued in a short, conclusory statement without supporting authority). [5] 
We find that the trial courts chain of 
 title determination is, in any event, correct.  The land owned by the Greenes 
 and that portion of the disputed marshlands, known as Marsh Island, to the east 
 were originally part of a much larger tract of land known as Wappoo Hall Plantation.  
 Marsh Island is bounded on the north by Wappoo Creek, on the east by an unnamed 
 creek that separates it from Polly Island, on the south by Elliotts Cut and 
 on the west by an unnamed creek that separates it from Fickens Island. [6] 
Wappoo Hall Plantation was conveyed to 
 John F. Ficken and Henry H. Ficken in 1898.  In 1902, the Fickens conveyed the 
 portion of the property on which Marsh Island is located to J. Martin Bottjer 
 (Bottjer Deed). [7]   When John F. Ficken purportedly conveyed this marshland to 
 Griffiths predecessor in title, Union Corporation, in 1913, Ficken no longer 
 had title to this marshland.  A grantor of real property generally can transfer 
 no greater interest than he himself has in the property.  Von Elbrecht v. 
 Jacobs, 286 S.C. 240, 243, 332 S.E.2d 568, 570 (Ct. App. 1985).  We find 
 that these marshlands, therefore, are not properly included in Griffiths chain 
 of title.

B.      Entitlement to Land Accretion

Assuming Marsh Island is in Griffiths chain of 
 title, his claim for the highlands must nevertheless fail.
Resolution of a controversy as to ownership 
 of the wetlands in South Carolina and accompanying highlands must be examined 
 in light of special ownership rules.  In general, the State holds title to lands 
 lying between the mean high water mark and mean low water mark on tidal navigable 
 waterways.  Hobonny Club, Inc. v. McEachern Caning Co., 272 S.C. 392, 
 252 S.E.2d 133 (1979).  Lands, however, that form and surround our tidal estuaries 
 and marshlands are subject to constant change by the sometimes powerful ebb 
 and flow of the tidal waters.  Land that may lie below the high tide mark may 
 over time, after the gradual deposit of silt and other sediment, rise well above 
 the previous mark.  The converse is, of course, true because the tides may erode 
 highland property so that it eventually falls below the high tide mark.  Such 
 change may also occur artificially through the efforts of man, as wetland property 
 may be filled and no longer be affected by the tides.  Because of these changes, 
 it can be difficult to discern at any fixed point in time where the rights of 
 the State end and the rights of a contiguous, private landowner begin.  
Our courts further recognize certain legal 
 principles concerning accretions by alluvial or artificial action to riparian 
 or littoral lands.  Wetland areas that become dry land through the natural accumulation 
 of mud, sand and sediment generally do not remain in title to the State, for 
 imperceptible additions to the shore from such deposits should follow title 
 to the shore itself.  Epps v. Freeman, 261 S.C. 375, 386, 200 S.E.2d 
 235, 241 (1973).  Significantly, however, where those accretions result from 
 the exertions of man[,]  the principle that title to imperceptible additions 
 to the shore from such deposits should follow title to the shore itself has 
 no application.  Id.  The distinction resting on the source of the accretion 
 is premised on ownership of contiguous land to which the accretion can attach.  
 See Horry County v. Tilghman, 283 S.C. 475, 480, 322 S.E.2d 831, 
 834 (Ct. App. 1984) (stating [a]n owners right to accretion depends upon the 
 contiguity of his lands to navigable waters and it is indispensable that there 
 be an estate to which the accretion can attach).  
Marsh Island derives its name from its 
 original state as marshland.  The McCrady Plat establishes that, as of 1913, 
 Marsh Island contained no highlands. [8]   Marsh Island, through the years, 
 did not remain an untouched piece of submerged property.  There is evidence 
 of man-made changes to the marshland.  For example, in approximately 1939, the 
 Intracoastal Waterways construction resulted in the filling of portions of 
 this area.  Even Griffiths expert, Hagar Metts, reluctantly acknowledged that 
 the area of these highlands looks like fill.  Moreover, after he claims he 
 acquired title in 1964, Griffith had approximately one thousand loads of fill 
 dirt deposited.  To the extent highlands were created by Griffiths own efforts, 
 no ownership benefit may inure to him.  This necessarily follows from the settled 
 principle that accretions resulting from the exertions of man preclude application 
 of the general rule that title follows the shore itself.  Epps, 261 
 S.C. at 386, 200 S.E.2d at 241.  Pursuant to Horry County v. Tilghman:  

[I]f alluvion is formed artificially and not by [the upland 
 owners] direction, he should be entitled to its benefit. . . . [I]f a project 
 is undertaken by the State or any governmental agency in aid of navigation, 
 and it is essential that the State or agency thereof have the benefit of the 
 alluvion formed by the accretion in order to realize the goal undertaken by 
 the project, it must be held that the private rights yield to the interest of 
 the public. 

283 S.C. at 481, 322 S.E.2d at 834.
Griffith seizes upon the term essential 
 to argue that it was not essential for the State to have the benefit of the 
 alluvion formed by the accretion for which it may have been responsible.  For 
 two fundamental reasons, this argument does little to advance Griffiths claim 
 of title to the highlands.  First, Griffith overlooks the other sources, including 
 himself, responsible for the fill and the inability to ascertain the degree 
 to which the various contributing sources are responsible for the creation of 
 the highlands.  In light of his burden of proof, Griffith certainly cannot find 
 refuge in the  inability to apportion responsibility for the artificial accretions 
 among the various contributors.  Second, it is undisputed the State owns the 
 tidelands. [9]   In essence, Griffith 
 owns no contiguous land to which the accretion can attach.  Tilghman, 
 283 S.C. at 480, 322 S.E.2d at 834.  While title to imperceptible additions 
  follow[s] the title to the shore itself[,] Griffith has no shore to which 
 title can attach.  Epps, 261 S.C. at 386, 200 S.E.2d at 241.  
Accordingly, we find ample evidence in 
 the record to support the trial courts determination that it is doubtful that 
 Griffith has title to any of Marsh Island.  Our review of the record firmly 
 persuades us as well that Griffith failed to meet his burden of proof.  
CONCLUSION
We conclude that the 
 trial court correctly found Griffith liable for slandering the Greenes title, 
 and we find no error with the trial courts determination of title in favor 
 of the Greenes and the State, respectively.  The judgment of the trial court 
 is therefore
 AFFIRMED.
HEARN, C.J., HOWARD and KITTREDGE, JJ., concur.

 
 
 [1]            Griffith also attempted to leverage the State with the 
 Metts Plat by seeking a deed from the State transferring to him its interest 
 in the property.  The State rejected Griffiths efforts.

 
 
 [2]            Griffith contends on appeal that his action against the 
 State should be reviewed de novo as an appeal from a purely equitable 
 action.  While we disagree, our independent review of the record convinces 
 us of the correctness of the trial courts findings.  Thus, a determination 
 of the appropriate standard of review is not critical to the outcome.

 
 
 [3]           The disputed tract is referenced in the record as the 
 lands shown on the [Metts Plat] located immediately to the east of the [d]isputed 
 [s]trip and immediately to the east of the Greenes property.  The parties 
 have, for ease of reference, consistently referred to the property as Marsh 
 Island or the highlands.  We will do likewise.

 
 
 [4]           We reject Griffiths argument that the States claim of 
 title was not before the trial court.  Because of Griffiths claim of superior 
 title to the highland portions of Marsh Island, the State was joined as a 
 party for the purpose of addressing and resolving Griffiths claim of paramount 
 title.  The States pleading denies Griffiths claim of paramount title and 
 asserts that it has prima facie fee simple title, in public trust, of all 
 lands now or formerly lying below the highwater mark of all tidal navigable 
 waters in the State, including the lands involved in this case which now lie 
 or formerly lay below the mean highwater mark.  The suggestion that the issue 
 of title was not before the trial court belies the record before us.  Indeed, 
 notwithstanding any purported deficiency in the States pleadings, the competing 
 claims of title to the highlands were presented to the trial court.  When 
 issues not raised by the pleadings are tried by express or implied consent 
 of the parties, they shall be treated in all respects as if they had been 
 raised in the pleadings.  Rule 15(b), SCRCP.  Finally, any error in affirmatively 
 finding in favor of the State would not inure to Griffiths benefit, for Griffith 
 in any event failed to prove his entitlement to the highlands in dispute.  
 

 
 
 [5]           We recognize an appellant may not use the reply brief 
 as a vehicle to argue issues  not argued in the appellants  brief.  Appellate 
 Practice in South Carolina, at 75.  Nevertheless, we note Griffiths reply 
 brief makes no mention of the trial courts chain of title determination, 
 although such issue is featured in the Respondents briefs.

 
 
 [6]           The eastern portion of Fickens Island is now known as 
 the Edgewater Park subdivision.  The Greenes lot is located in Edgewater 
 Park.

 
 
 [7]           The Bottjer Deed transfers Fickens Island and its adjoining 
 marshes.  The accompanying plat clearly designates the adjacent marshes as 
 part of the conveyance.  The plat is recorded with the deed in the land records 
 office of Charleston County in Book X-23, P 663.  Where a deed describes 
 land as it is shown on a certain plat, such plat becomes part of the deed 
 for the purpose of showing the boundaries, metes, courses and distances of 
 the property conveyed.  Hobonny Club, Inc. v. McEachern Caning Co, 
 272 S.C. 392, 397, 252 S.E.2d 133, 136 (1979).

 
 
 [8]           By contrast, the McCrady Plat depicts the nearby Polly 
 Island as containing a small area designated as highland.  

 
 
 [9]           After acquiring a deed for Marsh Island in 1964, Griffith 
 had approximately one thousand loads of fill deposited.  The State filed suit 
 to enjoin the filling, asserting its claim to all of the wetlands areas of 
 Marsh Island.  The case progressed to the state supreme court, which held 
 the State had title to the tidelands, specifically the land between the 
 lines of the ordinary high and low tides covered and uncovered by the daily 
 flow and ebb thereof.  State v. Griffith, 265 S.C. 43, 46, 216 S.E.2d 
 765, 766 (1975).