651 S.E.2d 614

HILTON HEAD PLANTATION PROPERTY OWNERS' ASSOCIATION, INC., a South Carolina not-for-profit corporation, Appellant

v.

Thomas M. DONALD, Laura E. Donald, Dieter Meuderscheid, Rita Meuderscheid, M. Simone Lawrence, Alan J. Palchak, Dori S. Palchak, Jacqueline T. Strickland, John J. Geiger, Joyce A. Geiger, J. Keith Elmblad, June A. Elmblad, J. Louis Grant, Mary Jean Farley, Daniel M. Driscoll, Leslie Hunt Driscoll, Vincent Paul Eck, Cecile O'Neill Eck, Edgar B. Seeley, Cynthia H. Seeley, Guy M. Blount, Melanie Blount, The State of South Carolina, and Jane Doe and Robert Roe, representing unknown Defendants, Minors, Incompetents, Persons Under Disability, and Members of the Armed Forces of the United States of America, Defendants,

of whom Thomas Donald, Laura E. Donald, The State of South Carolina, Jane Doe and Robert Roe, representing unknown Defendants, Minors, Incompetents, Persons Under Disability, and Members of the Armed Forces of the United States of America, are Respondents.

No. 4272.

Court of Appeals of South Carolina.

Submitted June 1, 2007.

Filed July 6, 2007.

Rehearing Denied Oct. 26, 2007.

---

22. *Taylor v. Taylor,* 229 S.C. 92, 97, 91 S.E.2d 876, 879 (1956).

Daphne A. Burns, of Mt. Pleasant and Douglas Whitsett MacNeille, of Hilton Head Island, for Appellant.

Dean B. Bell and Gregory Milam Alford, both of Hilton Head Island and Assistant Deputy Attorney General J. Emory Smith, Jr., of Columbia, for Respondents.

PER CURIAM:

In this quiet title action, the Hilton Head Plantation Property Owners' Association, Inc. (the Association) appeals the special referee's order determining the State of South Carolina owns title to certain disputed land (the Property). On appeal, the Association contends the special referee erred in failing to find it obtained the Property through chain of title or adverse possession. We affirm.

## FACTS

The Hilton Head Plantation Company, Inc. (the Developer) owned and developed a large tract of land known as Hilton Head Plantation. To further this development, the Developer created the Association. Within Hilton Head Plantation lies Bear Creek Subdivision II (the Subdivision). A salt marsh conservatory borders lots 48 through 60 of the Subdivision. The Property consists of a strip of land lying between these lots and the high water mark in the salt marsh conservatory.

In July 2000, the Association filed this quiet title action against the individual owners of lots 48 through 60, the State, and any other party claiming an interest in the Property. The

Association asserted title to the Property through a quitclaim deed from the Developer or alternatively through adverse possession. The State answered, claiming paramount title to the Property pursuant to the public trust doctrine. Thomas M. and Laura E. Donald, the owners of lot 54 in the Subdivision, also answered, reiterating the State's argument. No other party asserted an interest in the Property.

The case was referred to a special referee for trial. At trial, Jack Best, an employee of the Developer from 1972 to 1984, testified the Developer dredged a nearby creek in 1972 and 1973. This dredging caused spoil to build up and created a berm between Hilton Head Plantation and the marsh area. Best further testified that prior to these activities, the area now constituting the Property was tidal. In addition, the Developer did not provide for a buffer area between the newly platted lot lines and the marsh.

The special referee held the Property was created in the early 1970's by spoil from the Developer's dredging. Consequently, the special referee concluded the area belongs to the State. The Association filed a motion to reconsider, which the special referee denied. This appeal followed.

## STANDARD OF REVIEW

Generally, an action to quiet title to land lies in equity. *Goldman v. RBC, Inc.*, 369 S.C. 462, 465, 632 S.E.2d 850, 851 (2006). However, when the defendant's answer raises an issue of paramount title to land, such as would, if established, defeat plaintiff's action, the issue of title is legal. *Mountain Lake Colony v. McJunkin*, 308 S.C. 202, 204, 417 S.E.2d 578, 579 (1992); *see also Bryan v. Freeman*, 253 S.C. 50, 52, 168 S.E.2d 793, 793–94 (1969) ("[W]hen the defendant's answer raises an issue of paramount title to land, such as would, if established, defeat plaintiff's action, it is the duty of the court to submit to a jury the issue of title as raised by the pleadings."). "Therefore, in a case tried without a jury, the factual findings of a judge regarding title will not be disturbed on appeal unless found to be without evidence which reasonably supports the judge's findings." *Wigfall v. Fobbs*, 295 S.C. 59, 60–61, 367 S.E.2d 156, 157 (1988).

## LAW/ANALYSIS

The Association contends the special referee erred in refusing to find it acquired the Property through chain of title or adverse possession. We disagree.

■■ "Historically, the State holds presumptive title to land below the high water mark." *McQueen v. South Carolina Coastal Council,* 354 S.C. 142, 149, 580 S.E.2d 116, 119 (2003); *see also Hobonny Club, Inc. v. McEachern,* 272 S.C. 392, 396, 252 S.E.2d 133, 135 (1979) ("This Court has held that lands lying between the usual high water line and the usual low water line on tidal navigable watercourses enjoy a special or unique status, being held by the State in trust for public purposes."). "One asserting title to this land must prove a specific grant from the sovereign[,] which is strictly construed against the grantee." *Coburg Dairy, Inc. v. Lesser,* 318 S.C. 510, 512, 458 S.E.2d 547, 548 (1995).

■■ The Association claims the Developer, as the owner of Hilton Head Plantation at the time the Property was created, obtained title to the Property through accretion. As a result, the Association asserts its quitclaim deed from the Developer conveyed the Property to the Association. Generally, a riparian owner enjoys the right to any lands formed by accretion. 78 Am.Jur.2d *Waters* § 35 (2002); *see also* 65 C.J.S. *Navigable Waters* § 95 (2000) ("[A]ny increase of soil to land adjacent or contiguous to a navigable stream or water, formed by accretion or alluvion, belongs to the riparian or littoral owner."). However, "artificial accretions which are caused solely by the act of the upland owner should not inure to his benefit, for the upland owner should not be permitted to enlarge his own estate at the expense of the State." *Horry County v. Tilghman,* 283 S.C. 475, 481, 322 S.E.2d 831, 834 (Ct.App.1984) (quoting *Borough of Wildwood Crest v. Masciarella,* 92 N.J.Super. 53, 222 A.2d 138, 143 (Ch.1966)); *see also* 65 C.J.S. *Navigable Waters* § 96 (2000) ("Under the common law, a littoral owner cannot extend its own property into water by landfilling or purposely causing accretion.").

■■ In this case, Best's testimony supports the special referee's conclusion that the Property was formed by the Developer's dredging activities in the early 1970's. Best's

testimony also supports the special referee's decision that the State owned the Property because it was below the high water mark before this dredging. As a result, the Developer did not have title to the Property at the time it quitclaimed the Property to the Association. *A fortiori,* the Association may not claim the Property through a deed from the Developer. Finally, based on our finding that the State holds title to the Property, the Association also may not claim the Property through a theory of adverse possession. *See Davis v. Monteith,* 289 S.C. 176, 179–80, 345 S.E.2d 724, 726 (1986) ("[A]dverse possession does not run against the [S]tate or its duly constituted political subdivisions."). Based on the foregoing, the special referee's decision is

**AFFIRMED.**[1]

STILWELL, SHORT, and WILLIAMS, JJ., concur.

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.