21070

STATE of South Carolina, Appellant, v. Earl FAIN, Jr., Earl Fain, III, James B. Fain and Remer R. Lane, Respondents.

(259 S. E. (2d) 606)

*Atty. Gen. Daniel R. McLeod, Asst. Atty. Gen. Edward B. Latimer, Paul H. Infinger* and *William C. Moser,* Columbia and *Edward D. Buckley* Charleston *for Appellant.*

*Dowling, Dowling, Sanders & Dukes,* Hilton Head Island and *James P. Harrelson,* of *Harrelson & Gregory,* Walterboro, *for Respondents.*

October 24, 1979.

*Per Curiam:*

This is a quiet title action instituted by the State (appellant) to extinguish a cloud on its claimed title to certain tidelands situated on the Combahee River in Colleton County. Respondents, by way of answer, asserted title to the real property in dispute and demanded that appellant's claim to title be extinguished by the court. The case was tried before a jury and, at the conclusion of the evidence, motions were made by each party for a directed verdict. The lower court granted a directed verdict in favor of respondents, denying the motion of the State, from which ruling this appeal has been taken. We reverse and remand for further proceedings in conformity with the views herein expressed.

The property to which the State's claim is asserted lies approximately twenty-six miles upstream on the Combahee River from Fields Point, a National Ocean Survey Station located near the juncture of the Combahee River with the Coosaw River, which is, at that point, the inter-coastal waterway. The area in dispute was formerly under dike and, in the remote past, used for rice cultivation for an indeterminate number of years. The dikes and trunks in the canals have apparently not been intact for many years, and the unenclosed property in question has reverted to a natural state not dissimilar to any open tidewater area. The mean tidal fluctuation in the area is 3.1 feet. Intervening between this area and the channel of the Combahee River are disjointed remnants of a deteriorated dike, which was artificially constructed and of ancient origin. This dike was constructed

parallel with the Combahee River and near its channel. Portions of the remnants of this dike protrude at intervals above the mean high water mark, but access to the disputed area from the river channel is free and open for both boaters and the ebb and flow of the tide. Other than runoff of rain from adjacent fastlands, the tidelands in dispute have no independent source of water other than the waters of Combahee and the ebb and flow of tide in that river.

Respondents assert title to the disputed areas by virtue of a direct and unbroken chain to three contiguous grants of title from the King of England: two to respondents' predecessor-in-title, John Palmer (being dated, respectively, January 12, 1705 and September 12, 1705) and the other to respondents predecessor-in-title, Mary Hutson (being dated December 12, 1746), the grants, in the aggregate, totaling 1732 acres. Although each of the grants recite the attachment of a plat to the grant, there are no such plats of record nor have any been otherwise located.

In this action we are concerned only with the southern boundary of the granted land, which boundary is designated in the grants as the Combahee River. The trial judge found, and there has been no appeal from such finding, that the Combahee River is a tidal, navigable stream. He further held that the "bank" of the Combahee River is clearly defined by the remnants of the above-referenced deteriorated dike protruding above high water and that this "bank" constitutes the southern boundary of respondents' grant. The effect of this decision was to grant to respondents the disputed tidelands since all of such lands lie immediately to the north of the line designated by the lower court as the boundary.

It is undisputed that the land in question is covered by water at each high tide, and that the Combahee River is a tidal, navigable stream. In view of the above, respondents are confronted with the fundamental principle of tidelands law in this jurisdiction that

in the case of a tidal navigable stream the boundary line is the high water mark, in the absence of more specific language showing that it was intended to go below high water mark, and the portion between high and low water mark remains in the State in trust for the benefit of the public.

*State v. Hardee,* 259 S. C. 535, 539, 193 S. E. (2d) 497, 501 (1972); *see also Hobonny Club, Inc. v. McEachern,* S. C., 252 S. E. (2d) 133 (1979); *Cape Romain Land and Improvement Co. v. Georgia-Carolina Canning Co.,* 148 S. C. 428, 146 S. E. 434 (1928); *State v. Pacific Guano Co.,* 22 S. C. 50 (1884).

In addition to the above principle of tidelands law, it is well settled that the State comes into court with a presumption of title, and, if an individual is to prevail, he must recover upon the strength of his own title, of which he must make proof. *State v. Hardee, supra; State v. Pinckney,* 22 S. C. 484 (1884). It is further a settled rule of construction that a grant by the government to a subject is construed most strongly against the grantee and in favor of the grantor. *State v. Pacific Guano Co., supra.* Giving due adherence to these principles, it necessarily follows that respondents in no event can prevail in this case on their grants alone. The grants are lacking in any language disclosing an intent to convey lands below high water mark and, as previously stated, the grants are not supported by plats.

Respondents offered at trial extrinsic testimony as to the history of the region during the period of almost three hundred years since the grants. Such testimony was offered in support of their theory that the lands in question were highlands at the time of the grants and that it was, thus, the intent of the grantor to convey the tidelands in dispute. This testimony was offered through a number of expert witnesses such as an historian, a geologist, engineers in various fields, and others. Illustrative of the theories advanced by these witnesses are the hypotheses that the disputed land subsided

through the years due to the removal of peat and trees therefrom, and that the water level of the Combahee River had risen through the years by reason of silting and diking of the river to facilitate the planting of rice. These examples, while not all-inclusive of the areas of expert testimony, demonstrate the nature of the testimony on which respondents' was primarily grounded.

The State, in proving its case, relied principally on its presumption of title as well as the other fundamental principles of tidelands law which we have recited. It offered photographic evidence of the fact that the land in dispute is covered by normal high tide and testimony of an expert who gave the water depths on the disputed property at various stages of the tide.

We find that the trial court was in error in ruling that respondents' property extended to the "bank" of the Combahee River which it considered to be coextensive with the remnant of the dike near the channel of the river. From the authorities cited above, it is clear that the *prima facie* title of the State extended to the northernmost flow of mean high water, which boundary would embrace the area in dispute. Thus, it was error to direct a verdict for respondents.

We next consider whether the trial court should have granted the State's motion for a directed verdict. The State has made a *prima facie* case of ownership of the lands in question. Unless the respondents have presented competent evidence legally sufficient to create a factual issue as to the intent of the original parties to the grant, verdict should be granted for the State in this case.

We are not familiar with any case in this jurisdiction which has decreed private ownership of tidelands unless there existed language in the grant or designations on the plat which were interpreted by the court as manifesting an intent to convey tidelands. Here there is a complete absence of any language in the grants lending itself

to such an interpretation.[1] It was said in *State v. Hardee,* *supra,* that tidelands remain in the state unless there is "specific language, either in the deed or on the plat, showing that it was intended to go below high water mark." *Id.* 259 S. C. at 543, 193 S. E. (2d) at 501. While we do not hold that the above language excludes all extrinsic testimony on this issue, we do not feel that the testimony here offered by respondents meets that standard of proof prescribed by *Hardee.* The testimony offered was, for the most part, general in nature when related to the specific property involved, only indirectly relevant, and based on assumptions and speculation in many areas. Upon a thorough consideration of the record, we are of the opinion that the expert opinion testimony offered is not of sufficient probative value to create a jury issue as to the ownership of the tidelands in question. While respondents have been diligent and resourceful in presenting their case, we feel that the only reasonable inference from all of the testimony, when viewed in the light of the applicable law, is that a verdict should have been directed for the State on the issue of ownership of the tidelands in dispute.

Respondents also assert that this action is barred by the twenty year statute of limitation set forth in Section 15-3-310, Code of Laws of South Carolina (1976). This court was faced with a similar contention in the case of *State v. Yelson Land Co.,* 265 S. C. 78, 216 S. E. (2d) 876 (1975). The court in that case held that, assuming without deciding that the statute applied to the assertion of rights to tidelands, if the grants do not convey the disputed tidelands, there can be no basis for respondents' claim of

---

[1] The trial court in its rulings gave significance to the following formal language of the grants: "Together with all Woods Underwoods Timber and Timber Trees Lakes Ponds *Fishings Waters Water Courses* Profits Commodities Emoluments Appurtenances and Hereditaments whatsoever thereto belonging or in any wise Appertaining" (Emphasis added). It construed the emphasized words as indicative of an intent to include tidelands. This rationale was considered and rejected in *Cape Romain,* *supra.* See dissenting opinion of Justice Cothran. *Id.* 148 S. C. at 443, 146 S. E. at 440.

possession or the assertion of the bar of the statute. The rationale of the decision is that asserted possession, which respondents rely upon to refeat the action of the State, is based upon a presumption of possession which follows the establishment of legal title. The statute relied on by respondents, therefore, does not bar the present action by the State.

Respondents urge that we apply the "headlands" rule in determining the southern boundary of the area in dispute. This rule considers the boundary between a tributary waterway and a larger body of water to be a line joining the headlands of the tributary. This rule would run counter to the established law of tidelands in this state and, additionally, is not adaptable to the facts as we have found them to exist in this case. We decline to apply such rule.

For the foregoing reasons, the order of the lower court granting respondents' motion for directed verdict is reversed, and the case is remanded for further proceedings consistent with the holdings in this case.

Reversed and remanded.