639 S.E.2d 455

**O. Grady QUERY, Appellant,**

**v.**

**Carmen BURGESS and State of South Carolina, Respondents.**

**No. 4178.**

Court of Appeals of South Carolina.

Submitted Oct. 1, 2006.

Decided Nov. 13, 2006.

Rehearing Denied Jan. 18, 2007.

408

Kerry W. Koon and Philip A. Middleton, of Charleston, for Appellant.

Assistant Deputy Attorney General J. Emory Smith, of Columbia; Ben A. Hagood, Jr., of Mt. Pleasant, for Respondents.

KITTREDGE, J.:

This is an action to determine title to real property. Appellant O. Grady Query brought a declaratory judgment action against respondents Carmen Burgess and the State of South Carolina seeking to establish ownership over certain marshlands abutting his Folly Beach property. The master found Query did not own the marshlands. The master concluded the State owned the marshlands based on the "public trust doctrine." Query appeals, and we affirm.[1]

## I.

Burgess, a Folly Beach property owner, asked Query, a fellow Folly Beach property owner, for permission to build a dock across certain marshlands abutting Query's property so Burgess could access the Folly River. When Query refused, Burgess sought a permit from the Office of Coastal Resource Management to build a dock across the marshlands. In response, Query brought a declaratory judgment action against Burgess and the State[2] seeking to establish title over

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

2. "Any person claiming an interest in tidelands ... may institute an action against [the State] for the purpose of determining the existence of any right, title or interest of such person in and to such tidelands as against the State." S.C.Code Ann. § 48–39–220(A) (Supp.2005).

the marshlands. At trial, Query claimed ownership of the marshlands because the State specifically granted the marshlands to one of his predecessors in title.

Query introduced a 1696 and 1786 grant (with accompanying plat), which he argued showed the State's intent to grant one of his predecessors in title ownership of the marshlands. Burgess and the State asserted Query's evidence failed to rebut the presumption the State held the marshlands in fee simple for the benefit of the public. The master agreed with Burgess and the State and found the State held title to the marshlands in fee simple. Query appealed this finding.

## II.

"A suit for declaratory judgment is neither legal nor equitable, but is determined by the nature of the underlying issue." *Felts v. Richland County*, 303 S.C. 354, 356, 400 S.E.2d 781, 782 (1991). "To make this determination we look to the main purpose of the action as determined by the complaint." *Estate of Revis v. Revis*, 326 S.C. 470, 476, 484 S.E.2d 112, 115 (Ct.App.1997). Where, as here, the main purpose of the complaint concerns the determination of title to real property, it is an action at law. *Lowcountry Open Land Trust v. State*, 347 S.C. 96, 101, 552 S.E.2d 778, 781 (Ct.App. 2001) (citing *Wigfall v. Fobbs*, 295 S.C. 59, 60, 367 S.E.2d 156, 157 (1988) ("The determination of title to real property is a legal issue.")). In an action at law, "we will affirm the master's factual findings if there is any evidence in the record which reasonably supports them." *Id.* at 101–02, 552 S.E.2d at 781.

## III.

Query argues the 1786 grant and accompanying plat evince the State's intent to grant Query's predecessor in title ownership over the marshlands.

"[T]he State holds presumptive title to land below the high water mark." *McQueen v. S.C. Coastal Council*, 354 S.C. 142, 149, 580 S.E.2d 116, 119 (2003). When property is bounded by a tidal navigable waterway [3] "the boundary line is

---

3. Query concedes the Folly River is a tidal navigable waterway.

the high water mark, in the absence of more specific language showing that it was intended to go below high water mark, and the portion between high and low water mark remains in the State in trust for the benefit of the public." *State v. Hardee*, 259 S.C. 535, 539, 193 S.E.2d 497, 499 (1972). "The State may, however, grant private individuals an ownership interest in tidelands." *Lowcountry*, 347 S.C. at 102, 552 S.E.2d at 781. To establish ownership of tidelands or marshlands, a claimant must show (1) the claimant's predecessors in title possessed a valid grant, and (2) the grant's language was sufficient to convey title to land below the high water mark. *Id.* at 103, 552 S.E.2d at 782. "A deed or grant by [the State] is construed strictly in favor of the State and general public and against the grantee." *Hardee*, 259 S.C. at 539, 193 S.E.2d at 499.

The 1786 grant on which Query relies provides:

We have granted, and by these Presents do grant unto the said Martha Samways, her Heirs and Assigns, a Plantation or Tract of Land containing one thousand nine hundred [and] forty Acres being the Surplus contained in a Grant for the Folly Islands heretofore Granted to William Rivers on the [ninth] of September 1696 for seven hundred acres or thereabouts but upon a Resurvey found to contain within the lines of the same two thousand Six hundred and Forty having such Shape, Form and Marks, as are represented by a Plat hereunto annexed, together with all Woods, Trees, Waters, Water-courses, Profits, Commodities, Appurtenances, and Hereditaments, whatsoever thereunto belonging, To have and to hold the said Tract of one Thousand nine hundred [and] forty Acres of Land, and all and singular other the Premises hereby granted unto the said Martha Samways her Heirs and Assigns for ever . . . .

The accompanying plat includes the following surveyor's note:

I have caused to be admeasured [and] resurveyed unto Martha Samways . . . an Island situate in the district of Charleston Granted to Wm. Rivers the [ninth] Sept. 1696— for the Folly Islands for seven hundred acres or thereabouts, but upon the said resurvey found to contain within the lines of the same two thousand six hundred [and] forty acres—nineteen hundred [and] forty acres thereof being

surplus, [and] hath such Form, Marks, Buttings [and] Boundings as the above Plat represents.

The plat roughly delineates Folly Island. The plat contains the bare bones of a survey and is neither precise nor detailed.

The master examined the 1786 grant and accompanying plat and found they lacked the requisite specificity to indicate the State's intent to grant the marshlands to one of Query's predecessors in title. The master noted the absence of terms consonant with granting property below the high water mark, such as "marsh," "marshland," "high-water mark," or "low-water mark." Based on these factual findings, the master reasonably determined the 1786 grant and accompanying plat did not demonstrate the State's intent to grant title to the marshlands. The master thus found the plat was not sufficiently detailed to rebut the State's presumption of title to land below the high water mark. *See Hobonny Club, Inc. v. McEachern,* 272 S.C. 392, 398, 252 S.E.2d 133, 136 (1979) (holding that an exceptionally detailed and mathematically precise plat can rebut the State's presumption of title to marshes). Because there is evidence to support the master's findings, his order is

**AFFIRMED.**[4]

HEARN, C.J., and STILWELL, J., concur.

---

**4.** In light of this disposition, we need not address Query's remaining issue.