# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

East Cherry Grove Co., LLC and Ray & Nixon, LLC,
Respondents,

v.

State of South Carolina, South Carolina Department of
Health and Environmental Control, and Matt Leonhard,
Defendants,

Of whom The State of South Carolina is the Appellant.

Appellate Case No. 2021-000078

———————

Appeal From Horry County
R. Markley Dennis, Jr., Circuit Court Judge

———————

Opinion No. 6068
Heard October 11, 2023 – Filed July 3, 2024

———————

## AFFIRMED AS MODIFIED IN PART AND
## REVERSED IN PART

———————

Attorney General Alan McCrory Wilson, Deputy
Solicitor General J. Emory Smith, Jr., and Solicitor
General Robert D. Cook, all of Columbia, for Appellant.

Gene McCain Connell, Jr., of Kelaher Connell &
Connor, PC, of Surfside Beach, for Respondents.

———————

**VINSON, J.:** The State of South Carolina appeals the circuit court's order finding
East Cherry Grove Co., LLC and Ray & Nixon, LLC (collectively, Respondents)

owned two respective parcels of real property consisting of tidelands in North Myrtle Beach. The trial of this case involved two parcels of real property: one identified as Tax Map Number 145-00-01-001, in the name of East Cherry Grove (the East Cherry Grove Tract), and the other identified as Tax Map Number 145-02-25-004, in the name of Ray & Nixon (the Ray & Nixon Tract). On appeal, the State argues the circuit court erred by (1) misapplying the law of the case doctrine by applying a decision from an entirely different suit that did not decide the issues presented in this case; (2) applying the standard of proof of preponderance of the evidence instead of clear and convincing evidence; (3) determining Respondents own the entirety of the East Cherry Grove Tract when they presented no evidence they own the portions of the tract referred to as "the pig's ears" and "dome of the pig's head"; (4) determining Respondents own the entirety of the East Cherry Grove Tract when the maps relied upon failed to meet standards for the specificity of tidelands conveyances; (5) failing to use and apply the plat of Russell Courtney (the Courtney plat) instead of the overlays Respondents' expert prepared when the Courtney plat was much more consistent with the specificity and evidence required to establish tidelands conveyances; (6) improperly relying on the testimony of the title opinion expert about the general area included on the tax map of the East Cherry Grove Tract when he was not a surveyor and could not override the testimony of the two surveyors; and (7) failing to clarify that only the State controls navigable waterways. We affirm as modified in part and reverse in part.

**FACTS**

This case arose when Matt Leonhard applied to the Department of Health and Environmental Control (DHEC) for a permit to build a dock over tidelands adjacent to his property. Thereafter, Respondents brought an action pursuant to section 48-39-220(A) of the South Carolina Code (Supp. 2023)[1] requesting the circuit court issue a final decision holding they owned all of the area contained within the East Cherry Grove Tract and the Ray & Nixon Tract. In addition, Respondents asserted the decision of another circuit court judge in a 2014 case

---

[1] *See* § 48-39-220(A) ("Any person claiming an interest in tidelands which, for the purpose of this section, means all lands except beaches in the Coastal zone between the mean high-water mark and the mean low-water mark of navigable waters without regard to the degree of salinity of such waters, may institute an action against the State of South Carolina for the purpose of determining the existence of any right, title or interest of such person in and to such tidelands as against the State.").

involving a permit application submitted by Monty and Melody Teague (the Teague case)[2] supported their claim to the subject property because both East Cherry Grove and the State were parties to the action.[3]  The State moved for partial summary judgment, which the circuit court denied.

The circuit court held a bench trial remotely via WebEx on August 25, 2020.  The circuit court admitted four King's and sovereign grants of real property situated in the North Myrtle Beach area and their attached hand-drawn plats (the Grants) as plaintiff's exhibits during trial.[4]  The following describes the Grants.  A December 4, 1735 King's grant to John Morrall included a plat that provided the 453-acre parcel butted and was bounded to the Northeast by another parcel of land, to the Southeast by "Creek" and "Marsh," to the Southwest by vacant land and to the Northwest by the Little River.  An August 8, 1767 King's grant to John Alston (the Alston Grant) included a plat that provided the 300-acre, L-shaped parcel was bounded on one side by "Swash" and the other side by "The Sea" and on all other sides by vacant lands.  The Alston Grant does not expressly reference marsh or tidelands on the face of the plat; however, as the State points out in its brief, the portion of the plat described as "Miners Island" appears to bear markings indicating marsh grass.  A February 25, 1785 sovereign grant to Daniel Morrall (the 200-Acre Morrall Grant) included a plat showing the 200-acre parcel was bounded by the Little River on one side and "Creek" and "Sea Shore" on another.  The plat indicated it was bounded by lands laid out to others on all other sides.  The words "Salt Marsh" are printed inside the bounds of the plat.  A January 19, 1786 sovereign grant to Daniel Morrall included a plat that provided the 20-acre tract was bounded by "Marsh laid out to Daniel Morrall," by "Seas," by "Creek," and by "Vacant Marsh."  The words "Salt Marsh" and "Sand Banks" are printed inside the bounds of the plat.

Respondents presented the testimony of William Deschamps, Joel Floyd, and William Fairey, as well as the State's witness, Russell Courtney.  Deschamps testified he practiced real estate law and was a title insurance agent, and the circuit court allowed him to testify as an expert "in the field of title examination, title

[2] *East Cherry Grove Realty Co., LLC v. State*, No. 2014-CP-26-1412 (Conway, S.C., Ct. Common Pleas, July 8, 2015).
[3] Although Respondents additionally alleged a 1969 settlement agreement between the parties and quitclaim deeds associated with this settlement supported their claims, the circuit court did not consider this settlement in reaching its decision.
[4] The circuit court admitted the Grants as Plaintiff's Exhibits 6,7, 8, and 9, and they were also included as part of Plaintiff's Exhibit 1.

opinions, and the like." Floyd testified he was a retired registered land surveyor, and the circuit court allowed him to testify as an expert in the field of surveying without objection. Fairey testified he was a licensed land surveyor, and the circuit court allowed him to testify as an expert in the field of surveying without objection. Finally, Courtney testified he was a professional land surveyor, and pursuant to the State's request, the circuit court allowed him to testify as an expert in surveying and applying King's and sovereign grants and plats of property.

Deschamps testified he examined titles by starting with the current owner of property and tracing title back to its origin. He stated he examined the titles of the property at issue, and he identified the Grants in evidence. Deschamps testified the Ray & Nixon Tract could be traced back to a sovereign grant identified in the survey compilation depicted on the Courtney plat. Deschamps testified based upon his review of the Grants and the Courtney plat, there were King's or sovereign grants of the East Cherry Grove and Ray & Nixon Tracts. When asked to compare an exhibit showing a survey compilation prepared by surveyors Michael Culler, Jr., Joel Floyd, and Wendel Powers (the Culler, Floyd, and Powers map) with the Courtney plat, Deschamps agreed the Grants appeared on both exhibits. He stated he had no doubt the East Cherry Grove and Ray & Nixon Tracts were "subject to king[']s grants or sovereign grants based upon all of the survey information and [his] review of the title all the way back to the 1700s." Deschamps confirmed he was called as a witness in the Teague case and his testimony was consistent with the testimony he offered in that case. Upon cross-examination, Deschamps acknowledged he was not a surveyor. He explained that when completing a title examination on a property, he relies upon surveys that have been completed but he does not perform the surveys himself. He clarified that he was not rendering a surveying opinion but was rendering an opinion as to his title search based upon reviewing the Grants in conjunction with the surveys.

Joel Floyd testified he had been a registered land surveyor for thirty-two years prior to his retirement. He stated he was asked to determine whether the tracts at issue were under King's grants. Floyd explained he obtained an aerial photograph to scale that was taken in 1929, prior to any development in East Cherry Grove. He stated he hired two other land surveyors—Mike Culler, Jr., and Wendel Powers—to help him and they reviewed the Grants and attached plats and "interpolated where they ought to be on the aerial photograph using the landmarks." Floyd explained they established a baseline where two parcels of land joined each other, and starting from that baseline, they reconstructed the King's grants. Floyd clarified the line between those two parcels was a modern surveyed property line. Floyd identified a map (the Floyd map) in evidence as the map that

the three surveyors agreed upon as showing a compilation and mapping of the Grants. He opined that to a reasonable degree of surveying certainty this map was a true and accurate compilation of the Grants and that the East Cherry Grove and Ray & Nixon Tracts were all within those grants. Floyd identified two plaintiff's exhibits—the tax maps—as surveys of the properties that were the subject of this litigation. When asked if it was his opinion that those property boundaries were subject to the Grants, Floyd stated, "There's no other place it could come from."

Upon cross-examination, Floyd agreed that when comparing the tax map of the East Cherry Grove Tract with the Floyd map, the area in the upper left of the East Cherry Grove Tract that resembled a pig's ears in shape did not appear on the Floyd map. Floyd confirmed that area was excluded from the Floyd map but stated that if it was not covered by the Grants, he was not asked to plot it. He averred it would fall under another King's grant because there were King's grants covering that entire area; however, he clarified he plotted no such King's grants in this case.

Fairey testified he was a licensed land surveyor. Fairey confirmed he testified in the Teague case and rendered an opinion that the Teagues' proposed dock was to traverse property owned by East Cherry Grove. He agreed he determined that property was subject to a King's grant. As to Leonhard's proposed dock, Fairey opined it would extend onto property owned by Ray & Nixon. Fairey stated he reviewed the Floyd map as well as the Courtney plat in rendering his opinion and confirmed the Courtney plat showed the Ray & Nixon Tract was within a King's grant. He acknowledged, however, that he did not personally survey either the East Cherry Grove Tract or the Ray & Nixon Tract.

Courtney identified his compiled map—the Courtney plat—as containing the Grants. He testified the Ray & Nixon Tract was subject to a King's grant and fell inside the Alston Grant. Courtney testified the "pig eared area" of the East Cherry Grove Tract was not contained within the Grants and therefore he was only seventy percent sure that East Cherry Grove owned the entirety of the East Cherry Grove Tract. Courtney confirmed he drew the area described as the pig's ears outside of the Grants because he did not find a King's or sovereign grant that applied to that area. Courtney compared the Floyd map to the Courtney plat and stated the latter depicted the 200-Acre Morrall Grant as being much smaller than that depicted in Floyd's map. Courtney stated the 200-Acre Morrall Grant was inside the East Cherry Grove Tract. He averred his map showed "a lot more detail . . . and [wa]s a lot more like the King's grants themselves."

The circuit court ruled in favor of Respondents. It found Respondents met their burden of proof by a preponderance of the evidence and that East Cherry Grove was the owner in fee simple of the East Cherry Grove Tract and Ray & Nixon was the fee simple owner of the Ray & Nixon Tract. The circuit court further held title to both of these properties was derived from King's grants or sovereign grants per the testimony of all the experts at trial. Specifically, the circuit court found Respondents showed by a preponderance of the evidence that their predecessors in title possessed a valid grant from the sovereign and that the language of such grants was sufficient in detail to convey private ownership of tidelands described to the mean low-water mark in navigable creeks. The circuit court therefore found the evidence overwhelmingly supported its ruling that the properties were subject to a King's grant or sovereign grant and that the State could not issue a dock permit to Leonhard to wharf over property owned by Ray & Nixon unless he obtained Ray & Nixon's written permission. The circuit court held East Cherry Grove and Ray & Nixon owned their respective tidelands tracts to the low-water mark in all navigable creeks and below the low-water mark in all non-navigable creeks, but it clarified this did not include the bottoms of any navigable waters on these properties because such waters were public highways "subject to Plaintiffs' [sic] control." The circuit court additionally held the ruling of Circuit Court Judge Larry B. Hyman in the Teague case was "not only instructive but [wa]s the law of the case." The circuit court further found each of the Grants and the Floyd map along with the Courtney plat all established the existence of a King's or sovereign grant over the East Cherry Grove and Ray & Nixon Tracts.

The State filed a motion to reconsider, which the circuit court denied. The circuit court did, however, amend its order by changing the wording that the navigable waterways were "subject to Plaintiffs' control" to provide that such waterways were "subject to Defendant's control." This appeal followed.

**ISSUES ON APPEAL**

1. Did the circuit court err by applying the law of the case doctrine to determine ownership of the East Cherry Grove Tract?

2. Did the circuit court apply the incorrect burden of proof?

3. Did the circuit court err by determining Respondents owned the entirety of the East Cherry Grove Tract?

4. Did the circuit court err by failing to apply the Courtney plat instead of the overlays prepared by Respondents' expert's office?

5. Did the circuit court err by failing to clarify that only the State controls navigable waterways?

## STANDARD OF REVIEW

"An action to determine ownership of tidelands pursuant to section 48-39-220 is an action at law. In an action at law, tried without a jury, our scope of review extends to the correction of errors of law." *Grant v. State*, 395 S.C. 225, 228, 717 S.E.2d 96, 98 (Ct. App. 2011) (citation omitted). Therefore, "the trial court's factual findings will not be disturbed on appeal unless a review of the record discloses that there is no evidence which reasonably supports the [court's] findings." *Id.* (alteration in original) (quoting *Barnacle Broad., Inc. v. Baker Broad., Inc.*, 343 S.C. 140, 146, 538 S.E.2d 672, 675 (Ct. App. 2000)). We decide questions of law de novo with no particular deference to the trial court. *See Hoyler v. State*, 428 S.C. 279, 290, 833 S.E.2d 845, 851 (Ct. App. 2019).

## LAW AND ANALYSIS

### I. Burden of Proof

The State argues the circuit court erred by applying a preponderance of the evidence burden of proof instead of requiring clear and convincing evidence. Although the State acknowledges no tidelands case appears to directly address this issue, it argues applicable caselaw nevertheless suggests a clear and convincing standard applies. We disagree.

"[T]he State holds presumptive title to land below the high water mark." *Query v. Burgess*, 371 S.C. 407, 410, 639 S.E.2d 455, 456 (Ct. App. 2006) (alteration in original) (quoting *McQueen v. S.C. Coastal Council*, 354 S.C. 142, 149, 580 S.E.2d 116, 119 (2003)). "The State may, however, grant private individuals an ownership interest in tidelands." *Id.* at 411, 639 S.E.2d at 456 (quoting *Lowcountry Open Land Tr. v. State*, 347 S.C. 96, 102, 552 S.E.2d 778, 781 (Ct. App. 2001)). "[I]t is well settled that the State comes into court with a presumption of title, and, if an individual is to prevail, he must recover upon the strength of his own title, of which he must make proof." *State v. Fain*, 273 S.C. 748, 752, 259 S.E.2d 606, 608 (1979). "To rebut the State's presumptive title, a claimant must show (1) its predecessor in title possessed a valid grant, and (2) the

grant's language was sufficient to convey land below the high water mark." *Grant*, 395 S.C. at 228, 717 S.E.2d at 98.

"A grant from the State purporting to vest title to tidelands in a private party is construed strictly in favor of the government and against the grantee." *Lowcountry Open Land Tr.*, 347 S.C. at 103, 552 S.E.2d at 782. "Under English common law, a grant of tidelands was to be 'construed strictly . . . and it will not be presumed[] that the King intended to part from any portion of the public domain, unless *clear and special words* are used to denote it.'" *Grant*, 395 S.C. at 231, 717 S.E.2d at 99 (quoting *Martin v. Waddell's Lessee*, 41 U.S. 367, 406 (1842)); *see also Lowcountry Open Land Tr.*, 347 S.C. at 102, 552 S.E.2d at 782 ("Because tidelands are held in public trust, a grant of private ownership must contain 'specific language, either in the deed or on the plat, showing that [the grant] was intended to go below high water mark . . . .'" (quoting *Hobonny Club, Inc. v. McEachern*, 272 S.C. 392, 396, 252 S.E.2d 133, 135 (1979))); *Hoyler*, 428 S.C. at 292-93, 833 S.E.2d at 852 ("[O]ne claiming an interest in tidelands pursuant to section 48-39-220(A) must convince the court that the State intended to include the tidelands within the boundaries expressed in the deed.").

We hold the circuit court did not err by applying a preponderance of the evidence burden of proof. Our caselaw provides the State possesses presumptive title of tidelands property, and the person seeking to establish private ownership must present sufficient evidence to rebut this presumption. *See, e.g.*, *Fain*, 273 S.C. at 752, 259 S.E.2d at 608 ("[I]t is well settled that the State comes into court with a presumption of title, and, if an individual is to prevail, he must recover upon the strength of his own title, of which he must make proof."); *Grant*, 395 S.C. at 228, 717 S.E.2d at 98 ("To rebut the State's presumptive title, a claimant must show (1) its predecessor in title possessed a valid grant, and (2) the grant's language was sufficient to convey land below the high water mark."). In *Query*, this court affirmed the master's order finding a 1786 grant and accompanying plat "was not sufficiently detailed to rebut the State's presumption of title to land below the high water mark." 371 S.C. at 412, S.E.2d at 457. This court concluded evidence supported the master's conclusion when the grant and plat did not contain terms indicating the granting of property below the high-water mark, such as "marsh," "marshland," "high-water mark," or "low-water mark." *Id.* More recently, in *Grant*, this court again considered the 1786 grant and plat at issue in *Query* and affirmed the trial court's determination that the grant and plat lacked evidence of the requisite intent to convey tidelands, finding the evidence in the record supported the trial court's conclusion. *See Grant*, 395 S.C. at 236, 717 S.E.2d at 102. In *Grant*, this court also considered a 1696 grant and determined the "grant

abstract lack[ed] any indication of an intent to convey land below the high water mark" and therefore found "the trial court's determination [the appellant] failed to rebut the State's presumptive title [wa]s supported by evidence in the record." *Id.* at 232, 717 S.E.2d at 100; *see also Fain*, 273 S.C. at 752, 259 S.E.2d at 608 (holding the State was entitled to a directed verdict when the grants at issue lacked "any language disclosing an intent to convey lands below high water mark and . . . the grants [we]re not supported by plats"). None of the foregoing tidelands cases expressly sets forth a standard requiring clear and convincing evidence. The reviewing courts affirmed the trial court's rulings when the record contained evidence to support its finding as to whether the party seeking to establish title rebutted the State's presumption of title. Here, the circuit court applied the presumption and determined, based on a preponderance of the evidence, that the Grants and accompanying plats Respondents presented contained sufficient detail to establish Respondents' ownership of the tidelands. We hold the circuit court applied the correct analysis by requiring Respondents to provide sufficient evidence to overcome the State's presumption of title and did not err by failing to require Respondents to establish ownership by clear and convincing evidence.

## II. Law of the Case Doctrine

The State argues the circuit court improperly applied the law of the case doctrine in determining Judge Hyman's ruling in the Teague case settled the question of East Cherry Grove's ownership of the East Cherry Grove Tract. The State contends the law of the case doctrine applies only to subsequent proceedings in the same case. The State further asserts Judge Hyman's ruling in the Teague case determined only that East Cherry Grove owned the narrow section of marsh under the Teagues' proposed dock. We agree.

"[T]he doctrine of 'law of the case' is just that—the law of the case in which it was made, not the law of future cases." *Builders Mut. Ins. Co. v. Bob Wire Elec., Inc.*, 424 S.C. 161, 165, 817 S.E.2d 807, 809 (Ct. App. 2018). "[T]he law of the case doctrine . . . applies only to subsequent proceedings in the same litigation following an appellate decision . . . ." *Lifschultz Fast Freight, Inc. v. Haynsworth, Marion, McKay & Guerard*, 334 S.C. 244, 245, 513 S.E.2d 96, 96-97 (1999).

We hold the law of the case doctrine does not apply. In the Teague case, Judge Hyman ruled the Teagues' proposed dock infringed on real property that East Cherry Grove owned. Judge Hyman made a finding of fact that according to the testimony of Joel Floyd, "The specific grant applying to the property over which the dock [wa]s to be built" was the 200-Acre Morrall Grant. Judge Hyman

concluded that pursuant to the 200-Acre Morrall Grant, East Cherry Grove "had a sovereign grant in its chain of title to the part of the marsh area over which the proposed dock [wa]s to be built."  Although the State and East Cherry Grove were both parties to the Teague case, this is a different suit rather than a subsequent proceeding in the same litigation.  *See Builders Mut. Ins. Co.*, 424 S.C. at 165, 817 S.E.2d at 809 ("[T]he doctrine of 'law of the case' is just that—the law of the case in which it was made, not the law of future cases."); *Lifschultz Fast Freight, Inc.*, 334 S.C. at 245, 513 S.E.2d at 96-97 (1999) ("[T]he law of the case doctrine . . . applies only to subsequent proceedings in the same litigation following an appellate decision.").  Thus, we hold the circuit court misapplied the law of the case doctrine, and Judge Hyman's ruling is not determinative of whether the entirety of the East Cherry Grove Tract is contained within a King's or sovereign grant.

We decline to address Respondent's arguments that the doctrines of collateral estoppel and res judicata precluded the State from relitigating Judge Hyman's finding that East Cherry Grove possessed a King's grant in its chain of title as to the property under the Teagues' proposed dock.  *See I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 419, 526 S.E.2d 716, 723 (2000) ("[A] respondent . . . may raise on appeal any additional reasons the appellate court should affirm the lower court's ruling, regardless of whether those reasons have been presented to or ruled on by the lower court."); *id.* at 420, 526 S.E.2d at 723 ("It is within the appellate court's discretion whether to address any additional sustaining grounds."); *id.* at 420 n.9, 526 S.E.2d at 723 n.9 ("The appellate court may or may not wish to address such grounds when it reverses the lower court's decision.").  Regardless, Judge Hyman's ruling pertained only to the portion of land over which the Teagues' proposed dock would have been built; this ruling did not conclude a sovereign grant covered the *entirety* of the East Cherry Grove Tract at issue in this case.  *See Carolina Renewal, Inc. v. S.C. Dep't of Transp.*, 385 S.C. 550, 554, 684 S.E.2d 779, 782 (Ct. App. 2009) ("The party asserting collateral estoppel must demonstrate that the issue in the present lawsuit was: (1) actually litigated in the prior action; (2) directly determined in the prior action; and (3) necessary to support the prior judgment."); *Plum Creek Dev. Co. v. City of Conway*, 334 S.C. 30, 34, 512 S.E.2d 106, 109 (1999) ("To establish res judicata, the [party] must prove the following three elements: (1) identity of the parties; (2) identity of the subject matter; and (3) adjudication of the issue in the former suit.").  Thus, his decision did not directly decide the merits of the issue presented in this case. Accordingly, even if we were to consider Respondents' additional sustaining grounds, Respondents' arguments would fail on the merits.  This does not affect Judge Hyman's ruling with respect to the narrow strip of land addressed in the

Teague case because the State does not contend the 200-Acre Alston Grant does not cover this particular portion of the East Cherry Grove Tract.

## III.  Ownership of East Cherry Grove Tract

As to the East Cherry Grove Tract, the State argues the Courtney plat shows the areas described as the pig's ears and dome of the pig's head and an adjacent strip are outside the boundaries of the 200-Acre Morrall Grant to the area.  The State contends the Grants, the Culler, Floyd, and Powers map, and the Floyd map did not show a grant covering marsh in the northwestern section of the tract in these areas. The State further asserts Floyd's testimony acknowledged the omission except for a vague reference to grants not in evidence.  The State contends the record therefore contains no evidence showing East Cherry Grove owns this portion of the tidelands property.  We agree.

"To rebut the State's presumptive title, a claimant must show (1) its predecessor in title possessed a valid grant, and (2) the grant's language was sufficient to convey land below the high water mark."  *Grant*, 395 S.C. at 228, 717 S.E.2d at 98.

The State challenges only the circuit court's decision as to portions of the East Cherry Grove Tract; it does not challenge the circuit court's decision regarding the Ray & Nixon Tract.  According to the testimony at trial, and as the Courtney plat and the Culler, Floyd, and Powers map demonstrate, the grant that applies to the East Cherry Grove Tract is the 200-Acre Morrall Grant.  The plat associated with this grant contains the words "Salt Marsh" inside the bounds of the plat.  Thus, as a preliminary matter, we hold evidence supports the circuit court's conclusion that this grant was sufficient in detail to establish private ownership of tidelands.  *See id.* at 228, 717 S.E.2d at 98 ("To rebut the State's presumptive title, a claimant must show (1) its predecessor in title possessed a valid grant, and (2) the grant's language was sufficient to convey land below the high water mark.").  The question we must answer, then, is whether evidence supports the circuit court's finding that a King's or sovereign grant covered the entirety of the East Cherry Grove Tract.  We hold the circuit court erred by concluding East Cherry Grove supplied sufficient evidence to rebut the State's presumptive title to the area described as the pig's ears and dome of the pig's head because no grant was identified during trial as covering this area.  None of the compiled survey maps delineating the surveyed boundaries that the Grants described included this portion. Both Deschamps and Courtney testified this area was not contained in the Grants. Although the tax map of the East Cherry Grove Tract includes this area, we hold this is not sufficient to rebut the State's presumption of ownership because

Respondents presented no evidence showing the tax map represented the boundaries of any of the Grants. Because we find no evidence supports a finding that this portion of the East Cherry Grove Tract was within any of the four King's or sovereign grants at issue, we reverse the circuit court's order as it pertains to this small section of the East Cherry Grove Tract.

## IV. The Courtney Plat

Next, the State argues the circuit court should have found the Courtney plat to be controlling because the tax maps Respondents relied upon lacked the required specificity. The State argues that only the Courtney plat showed a deed-based outline of the property and was therefore the only reliable source for determining the boundary of the claimed property. The State further asserts the Courtney plat was much more similar to the plat included with the original 200-Acre Morrall Grant than was the Floyd map. We disagree.

We hold the circuit court did not err in failing to rely solely upon the Courtney plat in reaching its decision in this case because it was within the circuit court's province to weigh all the evidence admitted at trial. *See Sheek v. Crimestoppers Alarm Sys., Div. of Glen Curt Consultants*, 297 S.C. 375, 377, 377 S.E.2d 132, 133 (Ct. App. 1989) ("In a law case tried without a jury, questions regarding credibility and weight of evidence are exclusively for the trial judge."); *see also Grant*, 395 S.C. at 228, 717 S.E.2d at 98 ("[T]he trial court's factual findings will not be disturbed on appeal unless a review of the record discloses that there is no evidence which reasonably supports the [court's] findings." (second alteration in original) (quoting *Barnacle Broad., Inc.*, 343 S.C. at 146, 538 S.E.2d at 675)). Here, the circuit court stated it relied upon the Floyd map as well as the Courtney plat in reaching its conclusions. During trial, Floyd, who testified as an expert in the field of surveying, stated he, Culler, and Powers agreed upon the Floyd map as showing a compilation and mapping of the Grants. He stated it was his opinion to a reasonable degree of surveying certainty that this map was a true and accurate compilation of the Grants and that the East Cherry Grove and Ray & Nixon Tracts fell within those grants. Fairey, who also testified as an expert in the field of surveying, stated he relied upon the Courtney plat as well as the Floyd map in rendering his opinion as to the Ray & Nixon Tract. Based upon the foregoing, we hold evidence supports the circuit court's conclusion regarding the ownership of the East Cherry Grove and the Ray & Nixon Tracts, with the exception of the pig's ears and dome of the pig's head portion, as discussed above. Accordingly, we hold the circuit court did not err by declining to rely solely upon the Courtney plat in reaching its conclusion.

## V. Control of Navigable Waterways

Finally, the State asserts the circuit court should have specified the navigable waterways are public highways subject to the State's control as opposed to the more general "Defendant's" control. Because Respondents concede this point, we clarify the navigable waterways contained within these tracts remain public highways subject to the State's control. *See* S.C. Const. art. XIV, § 4 ("All navigable waters shall forever remain public highways free to the citizens of the State and the United States . . . .").

As to the State's remaining argument that the circuit court improperly relied upon the title expert's opinion when he was not a surveyor and his opinion could not override the testimony of the two surveyors, the State has failed to address this issue in the body of its brief. *See Wright v. Craft*, 372 S.C. 1, 20, 640 S.E.2d 486, 497 (Ct. App. 2006) ("An issue raised on appeal but not argued in the brief is deemed abandoned and will not be considered by the appellate court." (quoting *Fields v. Melrose Ltd. P'ship*, 312 S.C. 102, 106, 439 S.E.2d 283, 284 (Ct. App. 1993))). Thus, we do not consider this issue.

## CONCLUSION

For the foregoing reasons, the circuit court's ruling is

**AFFIRMED AS MODIFIED IN PART AND REVERSED IN PART.**

**MCDONALD, J., and BROMELL HOLMES, A.J., concur.**